# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

KESHA T. WILLIAMS     )
             )
  Plaintiff,       )
             )
  v.          )
             ) CIVIL ACTION NO. 1:20-cv-01397 (CMH/TCB)
STACEY A. KINCAID;     )
             )  AMENDED COMPLAINT
  Serve:        )
  Stacey A. Kincaid     )  JURY TRIAL DEMAND
  Fairfax County Sheriff's Office  )
  4110 Chain Bridge Road   )
  Fairfax, VA 22030    )
             )
*In her official capacity*;    )
             )
and          )
             )
LISHAN KASSA, MD,    )
             )
  Serve:        )
  Lishan Kassa, MD     )
  4735 Valley Street     )
  Alexandria, VA 22312   )
             )
*In her individual and official capacity*; )
             )
and          )
             )
XIN WANG, NP,      )
             )
  Serve:        )
  Xin Wang, NP      )
  25767 Tullow Place    )
  Chantilly, VA 20152    )
             )
*In her individual and official capacity*; )
             )
and          )
             )
DEPUTY GARCIA,     )
             )

| Serve: | ) |
| Deputy Garcia | ) |
| Fairfax County Sheriff's Office | ) |
| 4110 Chain Bridge Road | ) |
| Fairfax, VA 22030 | ) |
| | ) |
| *In his individual and official capacity;* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AMENDED COMPLAINT

Plaintiff Kesha T. Williams ("Ms. Williams," or "Plaintiff"), by counsel, and for her Amended Complaint against Fairfax County Sheriff Stacey A. Kincaid ("Kincaid"), Xin Wang, NP ("NP Wang"), Lishan Kassa, MD ("Dr. Kassa"), Deputy Garcia ("Garcia," collectively, "Defendants"), states as follows:

## STATEMENT OF THE CASE

1.      Ms. Williams' suffered unconstitutional treatment while incarcerated at the Fairfax County Adult Detention Center ("FCADC") in 2018 and 2019. Ms. Williams, a transgender woman, should have been housed according to her gender as legally recognized by the State of Maryland and, even if her gender had not been legally recognized, she should have been housed according to her self-identification as a woman.

2.      Instead, Kincaid, by and through the staff she oversees and the policies she promulgates, housed Ms. Williams in FCADC's male housing. This decision is plainly unconstitutional, but it also raises issues of disability discrimination as Ms. Williams suffers from gender dysphoria, a disability suffered by many (but certainly not all) transgender people.

3.      The decision to house Ms. Williams in male housing created the necessity to provide reasonably accommodations for her gender dysphoria. Critically, the need to

accommodate Ms. Williams would likely not have been necessary if she had been placed in female housing.

4.      Once Defendants created the need for Ms. Williams' accommodation through their unconstitutional actions, they then failed to meet their statutory duties under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*., and/or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a.

5.      Ms. Williams simply sought humane conditions at FCADC; conditions that would allow her to maintain her dignity. Defendants failed her.


## NATURE OF ACTION

6.      This is an action under 42 U.S.C. § 1983 ("Section 1983") stemming from the treatment of Ms. Williams during her incarceration at the FCADC. Ms. Williams seeks relief due to Defendants' failure to provide medical treatment in violation of the Eighth Amendment to the United States Constitution. Ms. Williams further seeks relief for Equal Protection violations based on her sex under the Fourteenth Amendment.

7.      This action states an additional claim under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*., and/or Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, for Defendants' discrimination against Ms. Williams in violation of these Acts based on her disability, as well as a claim arising from Defendants' gross negligence in violation of the common law of Virginia.

**<u>PARTIES</u>**

8.      Plaintiff Kesha T. Williams ("Ms. Williams," or "Plaintiff"), at all times relevant to this Complaint, was incarcerated by the Fairfax County Sheriff's Office at the Fairfax County Adult Detention Center in Fairfax County, Virginia.

9.      Ms. Williams is a transgender woman, an individual whose gender identity (female) is different from the gender (male) assigned to her at birth.

10.     Ms. Williams has completed a legal name change to her current name and a legal change in her gender markers in her resident state of Maryland. Her driver's license bears the designation of "female." In all ways, the law recognizes Ms. Williams' as a woman.

11.     As an individual whose gender identity is female, Ms. Williams identifies as a woman, expresses her gender identity as a woman, and lives full-time as a woman.

12.     Ms. Williams suffers from gender dysphoria, which is "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics."[1]

13.     Gender dysphoria can in large part be alleviated through treatment, including hormone therapy.

14.     Ms. Williams sought to continue her ongoing treatment for gender dysphoria while in custody of FCADC. Ms. Williams' treatment consisted primarily of a hormone therapy, which she used to effectively manage and alleviate the gender dysphoria she experienced.

15.     Ms. Williams also sought accommodations for her condition from FCADC after being placed in male housing. These accommodations included access to female items such as

---

[1] This definition of gender dysphoria is provided by the World Professional Association for Transgender Health ("WPATH") Standards of Care, 7th version. For more information about WPATH and WPATH Standards of Care, please see Paragraph 24, *infra*.

undergarments, searches conducted by female, rather than male, Sheriff's deputies, and the ability to shower privately.

16.     Kincaid is the Sheriff of Fairfax County, and is the independent constitutional officer responsible for the operation of FCADC pursuant to Virginia law.

17.     Defendant Deputy Garcia ("Garcia"), at all times relevant to this Complaint, was, working for the Fairfax County Sheriff's Office, and was a person subject to suit under Section 1983.

18.     At all times relevant to this Complaint, Garcia was in uniform and displaying his badge of authority.

19.     At all times relevant to this Complaint, Garcia was acting under color of state law.

20.     Under Virginia law, Kincaid is responsible for establishing minimum performance standards and management practices to govern the deputies for whom she is responsible.

21.     Defendants NP Wang and Dr. Kassa were, at all relevant times, medical professionals who were employed or contracted by the Fairfax County Sheriff's Office to provide medical treatment to inmates at FCADC.

22.     Defendants NP Wang and Dr. Kassa were the individuals primarily responsible for Ms. William's medical treatment and participated in the denial to her of adequate and necessary medical treatment for gender dysphoria.

23.     Kincaid, by and through the deputies and jail employees who work under her authority, including Defendant Deputy Garcia, were, at all times relevant to this Complaint, responsible for the implementation of the FCADC's policies and procedures, as well as the welfare of inmates, including Ms. Williams.

## JURISDICTION AND VENUE

24.     This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this action asserts a deprivation of one or more federal constitutional rights under Section 1983.

25.     This Court has supplemental jurisdiction over Ms. Williams' state law claims against Defendants under 28 U.S.C. § 1367(a) because the facts of the federal and state claims both occurred in this judicial district and form part of the same case or controversy.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## FACTS

### *Standards of Care Applicable to Gender Dysphoria*

27.      The World Professional Association for Transgender Health ("WPATH") is the leading international organization focused on transgender health care. WPATH has more than 1,000 members throughout the world consisting of physicians, psychiatrists, psychologists, social workers, surgeons, and other health professionals who specialize in the diagnosis and treatment of gender dysphoria. WPATH's Standards of Care (the "Standards of Care") are the prevailing standards of care used by mental health providers and medical professionals treating gender dysphoria.

28.     The Standards of Care require that a competent medical professional with knowledge and expertise in gender dysphoria evaluate a patient for appropriate and necessary treatment options.

29.     Medical treatment options vary and are often medically necessary. An individual with gender dysphoria may require feminization or masculinization of the body through hormone therapy and/or surgery to alleviate and effectively treat the condition.

30.     With effective treatment, individuals diagnosed with gender dysphoria are able to perform all major life activities.

### *Ms. Williams' Housing Classification*

31.     Ms. Williams was booked into FCADC on November 16, 2018.

32.     On this date, a Fairfax County Sheriff's Deputy provided Ms. Williams with the standard prison uniform provided to all female inmates, including 3 bras and 3 sets of female underwear.

33.     Ms. Williams was initially searched by a female deputy and escorted to the female side of the facility.

34.     Later that same day, November 16, 2018, Ms. Williams underwent an initial medical evaluation pursuant to FCADC policy.

35.     During this evaluation, Ms. Williams informed the medical provider, NP Wang, that she is transgender, that she lives full-time as a woman and identifies as a woman, that she has been on hormone treatment for the past fifteen (15) years, and that her current hormone medication regimen consists of a daily pill and a bi-weekly injection.

36.     After learning Ms. Williams is transgender, NP Wang asked Ms. Williams whether she had undergone bottom surgery or if she still had the genitalia with which she was born.

37.     Kincaid, as the individual responsible for policy and training at FCADC, maintains a policy wherein transgender inmates are housed based on their genitalia.

38.     Specifically, Fairfax County Sheriff's Office Standard Operating Procedure 606 on "Transgender and Gender Non-Conforming Inmates" provides it is the policy of the Fairfax County Sheriff's Office that "[m]ale inmates shall be classified as such if they have male genitals" and "[f]emale inmates shall be classified as such if they have female genitals." SOP 606, Section II.E and Section II.F, respectively.

39.     After hearing Ms. Williams' answers, NP Wang changed Ms. Williams' records and labeled her as "male" for the purposes of housing classification.

40.     Sheriff's deputies at FCADC and NP Wang refer to Ms. Williams interchangeably as "male" and "female," as well as using both male and female pronouns, throughout her medical and carceral records.

41.     Sheriff's deputies at FCADC proceeded to place Ms. Williams in male housing based solely on the determination by NP Wang that Ms. Williams had male genitalia.

42.     Sheriff's deputies placed Ms. Williams in male housing without performing an assessment to determine Ms. Williams' vulnerability in the general jail population of the male unit for the purpose of ensuring Ms. Williams' safety and security.

43.     As a result of this housing reclassification, FCADC policy required Ms. Williams to return the female clothing she had been provided and replaced it with the same uniform worn by "male" inmates.

44.     Fairfax County Sheriff's Office policy provides that transgender and gender non-conforming inmates are to receive undergarments consistent with the gender of their housing assignment. Specifically, the policy states:

> Transgender and gender non-conforming inmates shall be provided standard jail attire and privileges consistent with the gender of their housing assignment. Inmates under hormone therapy with secondary sexual characteristics, such as breasts, may be provided appropriate undergarments, such as a bra, when clinically indicated by appropriate medical staff.

SOP 606, Section IV.B.

45.     After Ms. Williams was forced to return the bras she was initially issued, Ms. Williams requested a bra from NP Wang as an accommodation. NP Wang instructed Ms. Williams to purchase a bra from the commissary.

***Cessation of Ms. Williams' Ongoing Hormone Therapy Treatment Upon Incarceration***

46.     Ms. Williams brought the medication required for treatment of her gender dysphoria with her on the date of her booking into FCADC.

47.     Sheriff's deputies at FCADC asked Ms. Williams to store her medication in her locker along with other personal belongings prior to her incarceration.

48.     Upon her initial medical evaluation, Ms. Williams informed NP Wang that she had brought her medication with her and that it had been stored with her personal belongings at the facility.

49.     NP Wang did not permit Ms. Williams to retrieve the medication required for treatment of her gender dysphoria in order to prevent a lapse in her hormone therapy treatment.

50.     Fairfax County Sheriff's Office policy provides that "[t]ransgender or gender non-conforming inmates who were receiving hormone treatment and therapy at the time of their incarceration shall be referred to an appropriate medical doctor for further evaluation." SOP 606, Section IV.C.

51.     Ms. Williams completed a medical records release form on November 16, 2018 authorizing FCADC personnel to obtain information about Ms. Williams' hormone treatment from her personal medical provider.

52.     NP Wang's treatment notes indicate FCADC health care staff were to contact Ms. Williams' physician and follow up with Ms. Williams once her medical records were received.

53.     NP Wang did not consult Ms. Williams' medical records or physician prior to stopping her hormone treatment.

54.     Pursuant to WPATH's Standards of Care, the consequences of abrupt withdrawal of hormones when medically necessary include a high likelihood of negative outcomes such as surgical self-treatment by autocastration, depressed mood, dysphoria, and/or suicidality.

55.     On or about December 1, 2018, Ms. Williams requested a visit from a nurse, known as a "sick call visit," due to symptoms she was experiencing as a result of the sudden cessation of her hormone therapy treatment.

56.     The following day, a nurse responded to Ms. Williams' request and advised her to again fill out a medical records release form so that NP Wang could "start his meds," despite Ms. Williams having already completed such a release more than two (2) weeks prior.

57.     During this medical visit, Ms. Williams requested she be permitted mental health treatment and counseling.

58.     NP Wang received Ms. Williams' medical records from her regular medical provider on or about December 4, 2018.

59.     NP Wang initialed and dated each page of Ms. Williams' medical records as she reviewed them.

60.     Ms. Williams' medical records provided that the hormone treatment she received was required to treat her gender dysphoria, a long-term diagnosis for which she had been regularly receiving treatment for years.

61.     NP Wang initialed those pages indicating Ms. Williams' diagnosis and her treatment.

62.     Despite NP Wang having abruptly ceased Ms. Williams treatment for gender dysphoria upon her arrival at FCADC, NP Wang took no immediate action to obtain Ms. Williams the daily medication she required.

63.     NP Wang did not record having received Ms. Williams' medical records in an official log at FCADC until December 10, 2018 – six days after she received those records.

64.     On or about December 10, 2018, NP Wang finally ordered Ms. Williams' medically-necessary daily medication.

65.     The nearly month-long period when Ms. Williams did not have the medication she required adversely affected her ongoing treatment for gender dysphoria and caused her significant mental and emotional distress.

66.     On or about December 11, 2018, NP Wang initiated Ms. Williams' hormone therapy treatment, which consisted of an injection once every two weeks and a daily oral hormone medication.

***Request for Female Undergarments as Accommodation***

67.     As directed by NP Wang, Ms. Williams attempted to purchase a bra from the commissary shortly into her incarceration.

68. In accordance with FCADC's unconstitutional policy, Ms. Williams' request to purchase a bra from the commissary was denied; Ms. Williams was informed the item was not available to purchase by those housed on the male side of the facility.

69. On or about November 28, 2018, Ms. Williams made a written request to Kincaid, by and through FCADC's ADA Compliance Officer James Santmyers ("Santmyers") seeking a bra as a reasonable accommodation.

70. On or about November 30, 2018, Ms. Williams saw NP Wang to determine if a medical need existed for the provision of a bra to Ms. Williams.

71. On or about December 10, 2018, NP Wang granted Ms. Williams medical authorization to receive a bra as an accommodation for her condition.

72. The bra provided to Ms. Williams by FCADC did not fit Ms. Williams and Ms. Williams was unable to wear it.

73. Sheriff's deputies at FCADC told Ms. Williams the bra she had been provided was the largest size available at the facility.

74. On information and belief, individuals in female housing at the facility were provided bras of an appropriate size as needed.

75. FCADC did not provide Ms. Williams with a bra that fit throughout the duration of her incarceration where she remained housed with the male general population.

76. Without the bra she required, Ms. Williams suffered back pain and embarrassment, as well as emotional distress related to gender dysphoria.

77. On February 27, 2019, Ms. Williams requested to speak to Santmyers to request the provision of women's underwear.

78.     Santmyers referred this request to Medical. NP Wang saw Ms. Williams on March 3, 2019 to determine whether to authorize Ms. Williams to wear women's underwear in lieu of the men's boxer shorts she had been provided.

79.     On March 4, 2019, Dr. Kassa reviewed NP Wang's notes and determined that, despite Ms. Williams' history of gender dysphoria, her request for women's underwear should be denied because there was "no indication for ordering women panties."

80.     Dr. Kassa and NP Wang denied Ms. Williams' request for women's underwear to accommodate gender dysphoria, finding without explanation that the accommodation was not medically necessary.

***Lack of Private Showers, Intentional Misgendering, and Performance of Cross-Gender Searches at FCADC***

81.      Throughout her incarceration at FCADC, Ms. Williams experienced harassment by Sheriff's deputies based on her sex, sex-based stereotypes, and/or her gender identity.

82.     Sheriff's deputies at the facility primarily referred to Ms. Williams as "mister," "sir," "he," or "gentleman," despite her repeated requests to be referred to as "ma'am," "her," or by her legal name.

83.     Upon information and belief, use of such terms to harass transgender inmates is widely practiced at the facility despite being contrary to FCADC policy.

84.     Fairfax County Sheriff's Office policy provides that inmates "shall be called by their last names without reference to gender specific identifies such as Mr. Mrs. Miss, Ma'am, Sir or other gender specific terms used in addressing a person." SOP 606, Section IV.A.

85.     Ms. Williams found herself subjected to harassment by male inmates that caused her to fear for her safety throughout her duration of her incarceration spent in male housing.

86.     FCADC policy related to transgender and gender non-conforming inmates did not permit Ms. Williams the option of showering privately despite her discomfort with showering in the presence of others while incarcerated in male housing.

87.     Deputies at FCADC repeatedly subjected Ms. Williams to cross-gender searches despite her polite requests to be searched by a female deputy.

88.     On at least one occasion, a Sheriff's deputy at FCADC threatened to place Ms. Williams in solitary confinement if she did not submit to a search of her person by a male deputy.

89.     Fairfax County Sheriff's Office Standard Operating Procedure 606 provides that, the following criteria be followed "if there is uncertainty by a deputy as to a classified inmate's gender:"

> "If the inmate is housed with the female population, the inmate shall be searched by female staff only;" and
>
> "If the inmate is housed with the male population, the inmate shall be searched by male staff only."

SOP 606, Section IV.D.

90.     In January 2019, during a "shakedown" search of Ms. Williams' housing unit, Ms. Williams requested that a female, rather than a male, deputy search her person. A female deputy was present during this search, but Ms. Williams' request was not honored.

91.     Garcia, a male deputy, searched Ms. Williams and stated, "Sir, you are a male and I need to search you," before proceeding to pat Ms. Williams down in a highly aggressive manner.

92.     Garcia knew Ms. Williams to be a transgender woman and knowingly conducted an unconstitutional cross-gender search of her person.

93.     Garcia's search of Ms. Williams resulted in physical injury to Ms. Williams, including bruising to Ms. Williams' right breast. This injury caused Ms. Williams pain for several days.

94.     After completing his search of Ms. Williams' person, Garcia stepped to the side of the room and gestured toward Ms. Williams while interacting with other deputies. Garcia mocked Ms. Williams and made light of his actions in searching her person.

### *Barriers to Ms. Williams' Entry to the Inmate Workforce Program*

95.     Ms. Williams received medical clearance to enter FCADC's Workforce Program on or about November 30, 2018.

96.     In December 2018, Ms. Williams made her first request to FCADC for consideration in the Workforce Program.

97.     After her first request went unanswered, Ms. Williams contacted Santmyers to discuss how she should seek entry into the Workforce Program.

98.     In January 2019, Ms. Williams made at least one additional written request to be considered for the Workforce Program.

99.     Ms. Williams again contacted Santmyers after her second written request went unanswered.

100.    Ms. Williams witnessed inmates who had been incarcerated for a shorter time than herself be granted entry into the Workforce Program in as little as two weeks, and believed her requests were being ignored based on her being transgender.

101.    On February 11, 2019, Ms. Williams made an additional written request to be considered for the Workface Program and directed it to Lt. Gouldsby pursuant to Santmyers'

direction. On this request, Ms. Williams noted that she had requested consideration on multiple prior occasions and believed she was being discriminated against and excluded from the Program because she was transgender.

102.     Fairfax County Sheriff's Office policy provides that transgender or gender non-conforming inmates "shall be provided an opportunity to participate in services, programs, and all other privileges routinely provided to all inmates housed in the Fairfax County Adult Detention Center." SOP 606, Section II.B.

103.     On February 29, 2019, FCADC responded for the first time to Ms. Williams' requests to be considered for the Workforce Program.

104.     The response to Ms. Williams' complaint and request for consideration included a denial of FCADC having ever received prior written requests from Ms. Williams to enter the Program. FCADC instructed Ms. Williams to make additional written requests for consideration and direct them to two different deputies at the facility.

105.     On March 5, 2019, Ms. Williams submitted two additional requests to be considered to the Workforce Program as directed.

106.     In late March 2019, FCADC finally acknowledged and reviewed Ms. Williams' requests and granted her permission to participate in the Workforce Program.

***Lapse in Hormone Therapy Treatment Provided During Incarceration***

107.     Upon her acceptance and entry into the Workforce Program, Ms. Williams' oral medications were to be released by FCADC upon Ms. Williams' agreement they be self-administered.

108.    After Ms. Williams agreed to self-administer her medications, FCADC delayed in releasing her medications.

109.    As a result, Ms. Williams missed several days of her oral hormone medication before it was provided by FCADC.

110.    Ms. Williams' bi-weekly hormone injections continued to be administered by FCADC under the supervision of NP Wang.

111.    NP Wang failed to provide Ms. Williams the hormone injection she was scheduled to receive on April 22, 2019.

112.    NP Wang failed to provide Ms. Williams the subsequent hormone injection she was scheduled to receive on May 6, 2019.

113.    On May 9, 2019, Ms. Williams submitted a written complaint to FCADC noting she had not been receiving her required and approved treatment.

114.    On May 20, 2019, Ms. Williams was released from FCADC custody.


**COUNT I**
**Civil Rights Violation of 42 U.S.C. § 1983: Eighth Amendment**
**Deliberate Indifference**

*Against Defendant Xin Wang, NP*

115.    The allegations in the foregoing paragraphs are incorporated as if realleged herein.

116.    Defendant NP Wang knew of Ms. Williams' history of the serious medical condition of gender dysphoria and knew, without necessary treatment, this condition would cause Ms. Williams serious symptoms, including mental distress.

117. NP Wang failed to conduct an individualized assessment of the care Ms. Williams required for gender dysphoria upon learning of her condition early in her incarceration at FCADC.

118. NP Wang knowingly and intentionally stopped Ms. Williams' ongoing hormone therapy treatment despite knowing the serious risk to Ms. Williams health that abruptly stopping such treatment would pose.

119. NP Wang knowingly and intentionally interrupted the hormone therapy treatment eventually provided to Ms. Williams during her incarceration despite knowing she required consistent treatment to prevent serious adverse health effects.

120. NP Wang knew about and ignored an excessive risk to Ms. Williams' health that resulted from failing to provide her medically necessary treatment in a timely and uninterrupted manner.

121. At all times relevant to this Complaint, NP Wang remained deliberately indifferent to Ms. Williams' medical need to be adequately treated for gender dysphoria, including continuation of her ongoing hormone therapy treatment as well as regular and consistent provision of hormone therapy throughout her incarceration as required to alleviate Ms. Williams' serious medical symptoms.

122. NP Wang's denial of necessary medical treatment for gender dysphoria caused irreparable harm and unnecessary suffering to Ms. Williams, including severe anxiety and distress resulting in emotional and psychological harm.

123. NP Wang's failure to provide necessary medical treatment to Ms. Williams violated the Eighth Amendment to the United States Constitution. As a direct result of Defendant's actions, Ms. Williams suffered damages including, without limitation, pain and

suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

124.    NP Wang, by engaging in the aforementioned acts and/or omissions and/or in ratifying such acts or omissions, engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Ms. Williams, thereby justifying the award of punitive damages in an amount to be determined at trial.

## COUNT II
### Equal Protection Violation of 42 U.S.C. § 1983: Fourteenth Amendment Discrimination Based on Sex

### *Against Sheriff Kincaid and Deputy Garcia*

125.    The allegations in the foregoing paragraphs are incorporated as if realleged herein.

126.    Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex is presumptively unconstitutional and subject to heightened scrutiny.

127.    Sheriff's deputies employed at FCADC discriminated against Ms. Williams based on her sex by failing to process, search, and house Ms. Williams based on her gender identity, but rather searching and housing Ms. Williams in accordance with her biological sex.

128.    Kincaid instituted the policy by which her subordinates made the determination to process, search and house, Ms. Williams based on her biological sex rather than her gender identity.

129.    Kincaid bore responsibility for managing the application of the policy at FCADC by herself and the deputies under her command.

130.     FCADC's blanket policy of classifying inmates based on their birth-assigned sex for purposes of housing is contrary to federal regulations propounded pursuant to the Prison Rape Elimination Act ("PREA").

131.     Federal regulations pertaining to the PREA provide that in "deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether placement would ensure the inmate's health and safety, and whether the placement would present management or security problems." 28 C.F.R. § 115.42(c).

132.     Kincaid discriminated against Ms. Williams on the basis of sex by placing her in male housing at FCADC based solely on her genitalia and without concern for her health and safety among the general population in male housing.

133.     FCADC's policy of treating transgender individuals as the sex of their housing assignment for the purpose of triggering cross-gender search protections is contrary to federal PREA regulations.

134.     PREA regulations provide that cross-gender pat-down search should not occur unless there is an emergency. 28 C.F.R. § 115.15(a).

135.     Fairfax County Sheriff's Office, through Kincaid, does not describe any policy or procedure for searches of transgender and/or gender non-conforming inmates in the event they do not feel safe being searched by an individual of a particular gender.

136.     PREA regulations require effective training of deputies to conduct professional and respectful searches of transgender persons. 28 C.F.R. § 115.15(f).

137.    Kincaid discriminated against Ms. Williams on the basis of sex by subjecting her to cross-gender searches despite her stated discomfort with pat-down searches conducted by male deputies.

138.    Garcia discriminated against Ms. Williams on the basis of sex by subjecting her to a cross-gender search of her person despite his knowledge that Ms. Williams is a woman. Ms. Williams expressed to Garcia, a male deputy, her discomfort with being subjected to a pat-down search performed by a male deputy.

139.    Fairfax County Sheriff's Office, through Kincaid, does not describe any policy or procedure that permits transgender individuals to shower privately.

140.    PREA regulations require transgender persons be permitted to shower privately. 28 C.F.R. § 115.42(f).

141.    Kincaid discriminated against Ms. Williams based on sex by requiring she shower in the male shower facility based solely on her housing assignment and without consideration for her health and safety.

142.    Kincaid knew or should have known that FCADC's current policy created a pervasive and unreasonable risk of constitutional injury to individuals who identified themselves as a gender other than their birth-assigned sex, such as Ms. Williams.

143.    If not for the policy enacted by Kincaid and followed by her subordinates at FCADC, the constitutional injury suffered by Ms. Williams would not have occurred.

144.    The Fairfax County Sheriff's Office does not require inmates who are not transgender or gender non-conforming to be subject to cross-gender searches during their incarceration.

145.     Sheriff's deputies subjected Ms. Williams to discrimination based on her gender identity by purposefully misgendering her and delaying her participation in a beneficial workforce program at the facility.

146.     These actions by the deputies violated FCADC policy requiring inmates be referred to only by their last name, as well as policy requiring that transgender inmates be provided the same opportunity to participate in services and programs afforded to other inmates at the facility.

147.     Kincaid either knew or should have known that such treatment of transgender and/or gender non-conforming inmates, contrary to FCADC's policy, had become pervasive at the facility based on the frequency and obviousness of the violations.

148.     Inmates at the facility who were not transgender were permitted to enter the Workforce Program as early as two weeks into their incarceration.

149.     Sheriff's deputies at FCADC ignored Ms. Williams' initial requests to enter the program, resulting in her denial of the benefit for several months.

150.     Sheriff's deputies at FCADC engaged in this behavior because Ms. Williams is transgender, because she is attempting to transition genders, and/or because of the discriminatory, sex-based belief that people who are assigned the male sex at birth should display only stereotypically male characteristics, behaviors, or dress.

151.     Defendants discriminated against Ms. Williams because of sex, sex stereotyping and/or gender identity and deprived Ms. Williams of her right to equal protection of the laws guaranteed by the Fourteenth Amendment of the United States Constitution.

152.    Defendants' actions were not substantially related to any important government interest, nor were they even rationally related to any legitimate government or penological interest.

153.    As a direct result of Defendants' actions, Ms. Williams has suffered damages including, without limitation, pain and suffering; emotional, psychological, and physical distress; violation of dignity; and other pecuniary losses not yet ascertained.

154.    Defendants, by engaging in the aforementioned acts and/or omissions and/or in ratifying such acts or omissions, engaged in willful, malicious, intentional, and/or oppressive conduct, and/or acted with willful and conscious disregard of the rights, welfare, and safety of Ms. Williams, thereby justifying the award of punitive damages in an amount to be determined at trial.

**COUNT III**
**Failure to Accommodate**
**Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101 *et seq*.**
**Section 504 of the Rehabilitation Act, 29 U.S.C. §794a**

***Against Kincaid, Xin Wang, NP, and Lishan Kassa, MD***

155.    The allegations in the foregoing paragraphs are incorporated as if realleged herein.

156.    Ms. Williams suffers from a disability within the meaning and scope of 42 U.S.C. § 12102. Accordingly, Ms. Williams is a member of the class of persons protected by the ADAAA and Section 504 of the Rehabilitation Act, which makes it unlawful for a public entity and entities receiving federal funds to discriminate against an individual with a disability, or to deny the benefits of the services, programs, or activities of a public entity or entity receiving federal funds to a person with a disability.

157.     Ms. Williams is a qualified individual with a disability under Title II of the ADA, as the definition provided in the ADAAA encompasses individuals who rely on mitigating measures to ameliorate the effects of an impairment.

158.     Ms. Williams' disability substantially limits major life activities in the absence of hormone therapy and accommodations which permit her to live and present as a woman.

159.     With treatment, Ms. Williams can perform all major life activities.

160.     Defendants knowingly and intentionally failed to provide Ms. Williams with the necessary medication, aids, or services she requested, subjected her to discrimination, and/or maintained policies and procedures that had a disparate impact on Ms. Williams because of her disability and resulting in Ms. Williams being denied the same benefits and services available to inmates who do not have gender dysphoria.

161.     The accommodations requested by Ms. Williams included access to female undergarments, permission to be searched by female, rather than male, deputies, and access to a private shower.

162.     These accommodations were required as a result of FCADC's unconstitutional policy that required she be housed among the male population.

163.     In the event, *arguendo*, FCADC's policy of housing individuals based on their genitalia is found to be constitutional, Defendants bear responsibility for failing to provide the accommodations Ms. Williams required on account of her condition that arose as a result of her placement in male housing.

164.     Defendants denied Ms. Williams these accommodations, necessary to ensure her health, safety, and welfare while incarcerated at FCADC.

165. Defendants' acts and omissions violated the ADA and Section 504, which prohibit discrimination on the basis of physical and mental disability and protect persons such as Ms. Williams from the type of injuries and damages set forth herein.

166. As a direct and legal result of Defendants' actions and omissions, Ms. Williams has suffered and continues to suffer damages including, without limitation, pain and suffering; emotional, psychological, and physical distress; and other pecuniary losses not yet ascertained.

## COUNT IV
## Common Law Gross Negligence

### *Against All Defendants*

167. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

168. Defendants failed to comply with professional standards in the treatment, care, and supervision of Ms. Williams during her incarceration at FCADC. Defendants' failures include but are not limited to: failing to provide timely and necessary medical treatment; punishing Ms. Williams for behaviors and actions reflecting her medical diagnosis; denying her access to programs and activities; and failing to house Ms. Williams safely.

169. Kincaid failed to appropriately supervise, review, and ensure the provision of adequate care and treatment to Ms. Williams by custody and medical staff, and failed to enact appropriate standards and procedures that would have prevented the harm she has experienced.

170. Defendants acted negligently and improperly, breached their respective duties to Ms. Williams, and as a direct and proximate result, Ms. Williams suffered injuries and damages as alleged herein.

171.     The negligent conduct of Defendants was committed within the course and scope of their employment.

172.     The aforementioned acts of individual Defendants were conducted with conscious disregard for the safety of Ms. Williams and others, and were therefore malicious, wanton, and oppressive. As a result, Defendants' actions justify an award of punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff KESHA T. WILLIAMS requests that this Court enter judgment in her favor, and against Defendant Xin Wang, NP as to Count I, Defendants Stacey A. Kincaid and Deputy Garcia as to Count II, Defendants Stacey A. Kincaid, Xin Wang, NP, and Lishan Kassa, MD as to Count III, and all Defendants as to Count IV, and provide:

(a) For injunctive and declaratory relief, including but not limited to ordering Defendants to provide inmates with gender dysphoria with adequate and necessary medical care; and declaring unconstitutional and violative of federal law Defendants' practices in denying Ms. Williams and other similarly situated inmates with adequate and necessary medical treatment; and in addition

(b) For injunctive and declaratory relief, including but not limited to ordering Defendants to conduct individualized housing assessments for transgender inmates, enact policy that permits transgender inmates to request a search be conducted by an individual of a certain sex, enact policy that requires Fairfax County Sheriff's deputies adhere to transgender inmates stated request to be searched by an individual of their own sex, permit transgender individuals access to private showers as well as access to clothing

and hygiene items consistent with their gender identity; and declaring

unconstitutional and violative of federal law Defendants' practices of housing; and in

addition

(c) For compensatory, general and special damages, in an amount to be determined at

trial; and in addition

(d) For punitive damages as to each of Ms. Williams' respective Counts against

individual Defendants in an amount to be determined at trial; and in addition

(e) For attorneys' fees, costs, and expenses incurred by Ms. Williams in this action

pursuant to statute; and in addition

(f) Award any further relief this Court deems just and appropriate under the

circumstances.

## JURY DEMAND

**PLAINTIFF KESHA T. WILLIAMS DEMANDS A TRIAL BY JURY.**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Kesha T. Williams demands a trial by jury.

Dated:       February 12, 2021              Respectfully,

_____/s/_____
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine L. Herrmann, VA Bar No. 83203
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA  22201
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
        dcraumer@erlichlawoffice.com
        kherrmann@erlichlawoffice.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 12, 2021, a true copy of the foregoing was filed electronically with the Clerk of the Court and served electronically using the CM/ECF upon:

Alexander Fracuzenko (VSB No. 36510)
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: (703) 865-7480
Fax: (703) 434-3510
alex@cookcraig.com

*Counsel for Defendant Stacey A. Kincaid*

_____/s/_____
Joshua Erlich, VA Bar No. 81298
Davia Craumer, VA Bar No. 87426
Katherine Herrmann, VA Bar No. 83203
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA 22201
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
          dcraumer@erlichlawoffice.com
          kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Kesha T. Williams*