## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

KESHA T. WILLIAMS,         :
                           :

        Plaintiff,      :
                           :

      v.               :        Case No. 1:20-cv-01397-CMH-TCB
                           :

STACEY A. KINCAID, et al.    :
                           :

        Defendants.    :

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

COMES NOW the Defendant, Stacey A. Kincaid ("Defendant" or "Sheriff Kincaid") by and through her undersigned counsel, Alexander Francuzenko, Esq. and the law firm of Cook Craig & Francuzenko, PLLC, and in support of her Motion to Dismiss Plaintiff's Amended Complaint states as follows:

### ALLEGATIONS

The Plaintiff, Ms. Williams, "was incarcerated by the Fairfax County Sheriff's Office at the Fairfax County Adult Detention Center [("FCADC"] in Fairfax County, Virginia." (ECF No. 21; Am. Compl. ¶ 8). "Ms. Williams is a transgender woman, an individual whose gender identity (female) is different from the gender (male) assigned to her at birth." (Am. Compl. ¶ 9). "Ms. Williams suffers from gender dysphoria . . . ." (Am. Compl. ¶ 12).

The Complaint alleges that "Defendants NP Wang and Dr. Kassa were, at all relevant times medical professionals who were employed or contracted by the Fairfax County Sheriff's Office to provide medical treatment to inmates at the FCADC" and "were the individuals primarily responsible for Ms. William's medical treatment and participated in the denial to her of adequate and necessary medical treatment for gender dysphoria." (Am. Compl. ¶¶ 22 – 23). The Complaint

alleges that Sheriff Kincaid is "responsible for the implementation of the FCADC's policies and procedures, as well as the welfare of inmates . . . ."  (Am. Compl. ¶ 23).

The Complaint alleges that Sheriff Kincaid maintains a policy that states "[m]ale inmates shall be classified as such if they have male genitals" and that "[f]emale inmates shall be classified as such if they have female genitals."  (Am. Compl. ¶¶ 37 – 38).  The Complaint alleges that upon her booking, Ms. Williams "underwent an initial medical evaluation pursuant to FCADC policy."  (Am. Compl. ¶ 34).  "During this evaluation, Ms. Williams informed the medical provider, NP Wang, that she is transgender, that she lives full-time as a woman and identifies as a woman, that she has been on hormone treatment for the past fifteen (15) years, and that her current hormone medication regimen consists of a daily pill and a bi-weekly injection."  (Am. Compl. ¶ 35).

In response, "NP Wang asked Ms. Williams whether she had undergone bottom surgery or if she still had the genitalia with which she was born" and "[a]fter hearing Ms. Williams' answers, NP Wang changed Ms. Williams' records and labeled her as 'male' for the purposes of housing classification."  (Am. Comp. ¶¶ 36, 38).  "Sheriff's deputies at the FCADC proceeded to place Ms. Williams in male housing based solely on the determination by NP Wang that Ms. Williams had male genitalia."  (Am. Compl. ¶ 41).

The Complaint alleges that pursuant to Sheriff Kincaid's policies, Ms. Williams was not allowed to shower privately and that her requests to be searched by a female deputy were denied.  (Am. Compl. ¶¶ 86 – 89).  Ms. Williams alleges that she was denied the reasonable accommodation of a bra and female underwear.  (Am. Compl. ¶¶ 43 – 44; 69, 71 – 73; 77 – 79).  Ms. Williams alleges that it took several months for her to be permitted to enter the Workforce Program when other non-transgender inmates were permitted as early as two-weeks.  (Am. Compl. ¶¶ 148 – 149).  Ms. Williams was released from FCADC custody on May 20, 2019.  (Am. Compl. ¶ 58).

In her Complaint, Ms. Williams brings claims against Sheriff Kincaid, in her official capacity only, for policies that discriminated based on sex in violation of the Fourteenth Amendment, for failing to accommodate in violation the ADA/Rehabilitation Act, and for gross negligence under Virginia common law.

### STANDARD OF REVIEW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted. Fed R. Civ. P. 12(b)(6). Complaints are dismissed when they fail to assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory. *See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). All allegations and favorable inferences that can be drawn from those allegations will be viewed in a light most favorable to the non-moving party. *Albright v. Oliver*, 510 U.S. 266, 267 (1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court adopted the plausibility pleading standard in the case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Court will no longer accept that a cause of action for relief to be granted is probable based on bald allegations; the allegations must reach a level that make the cause of action plausible. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully . . . . Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility

3

and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" do not state a claim and are not assumed to be true. *Id.* (internal citations and quotations omitted).

## ARGUMENT

The Complaint fails to plead sufficient factual allegations to state claims against Sheriff Kincaid, in her official capacity, for (1) policies that discriminate based on sex in violation of Ms. Williams' equal protection rights under the Fourteenth Amendment, Count II; (2) failing to accommodate under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act, Count III; and (3) common law gross negligence, Count IV.

**I.     The Complaint's Fourteenth Amendment Equal Protection Claim Based on Sex for Money Damages against Sheriff Kincaid, in her Official Capacity, is Barred by the Eleventh Amendment**

"[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362 (1991) (internal citations omitted). "Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Hafer*, at 26. Thus, state officials sued for monetary relief in their official capacities are not persons because an official-capacity suit "is no different from a suit against the State itself." *Id.* "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, (1945), *overruled on other grounds, Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, (2002).

"In Virginia, sheriffs are state officials, Va. Code Ann. § 15.1–40.1 (1991), whose positions are constitutionally created, Va. Const. Art. VII, § 7." *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992). Accordingly, a suit against a sheriff in the Commonwealth of Virginia in his or her official capacity—or a sheriff's office—is equivalent to a suit against the state and not a "person" under § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (dismissing official capacity claim against Sheriff Perry as neither a state nor its officials acting in their official capacities are "persons" under § 1983); *Doud v. Virginia*, 282 Va. 317, 321 (2011) (In Virginia, a county sheriff "is an independent public official whose authority is derived from the Constitution of Virginia") (quoting *Carraway v. Hill*, 265 Va. 20, 24 (2003)).

As a result, Sheriff Kincaid, in her official capacity, is equivalent to Virginia and enjoys sovereign immunity under the Eleventh Amendment. Therefore, Plaintiff's § 1983 claim for monetary damages against her, in her official capacity, must be dismissed.[1]

## II.   The Complaint's Fourteenth Amendment Equal Protection Claim Based on Sex for Non-Monetary Relief against Sheriff Kincaid, in her Official Capacity, is Moot

While the Complaint's § 1983 official capacity claim for monetary relief is barred, the Complaint's § 1983 official capacity claim for non-monetary is not subject to same prohibition. *See Will*, 491 U.S. at 71 n. 10 (strictly for the purposes of prospective relief a state officer in their official capacity is considered a "person" under § 1983). However, the Complaint's request for declaratory and injunctive relief is moot.

"Mootness questions often arise in cases involving inmate challenges to prison policies or conditions." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007). The Fourth Circuit has "held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged

---

[1] The Complaint does not assert an individual capacity claim against Sheriff Kincaid.

policy, practice, or condition moots his claims for injunctive and declaratory relief." *Id*. at 286-87 (internal citations omitted).  The claim is moot because "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa,* 507 F.3d. at 287.  Accordingly, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

One exception to mootness, "permits federal courts to consider disputes . . . that are capable of repetition, yet evading review."  *Id.* (citing *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, (2007) (internal quotation marks omitted)).  "[J]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation." *Id.* at 288-89.  "There must be a 'demonstrated probability' that the challenged action will recur again, and to the same complainant." *Id.* at 289 (citing *Murphy v. Hunt,* 455 U.S. 478, 483 (1982) (per curiam)).

In *Incumaa*, the inmate's claim was premised on the conditions in a maximum security unit.  *Id.* at 282.  During litigation, the prisoner was transferred out of the maximum security unit. *Id.* at 285.  The Fourth Circuit noted that inmates are not arbitrarily placed in maximum security and such placement was "directly tied to an inmate's bad behavior."  *Id.* at 289.  As a result, the Fourth Circuit determined that under the "capable of repetition, yet evading review" standard it "would have to forecast bad behavior . . . and that it cannot base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules."  *Id.*  The Fourth Circuit held that "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power to hear cases for which there is *in*

*fact a reasonable* expectation of repetition." *Id.* (internal quotation marks and citations omitted) (emphasis original).

The narrow "capable of repetition, yet evading review" exception is not applicable here. The exception would require this Court to engage in conjecture as to whether Ms. Williams would be subject to subsequent incarceration in the FCADC. In other words, it would require the Court to speculatively presume Ms. Williams will be arrested again. Thus, Plaintiff's § 1983 claim for non-monetary damages against Sheriff Arthur, in her official capacity, are moot and must be dismissed.[2]

**III.     Plaintiff's ADA/Rehabilitation Act Discrimination Claim are Time Barred**

"Title II of the ADA does not contain a statute of limitations." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011). The court "therefore borrow[s] the state statute of limitations that applies to the most analogous state-law claim." *Id.* (citing 42 U.S.C. § 1988). The Virginia Disabilities Act provides a one-year statute of limitations for claims brought under the act. (Va. Code § 51.5-46). The "Virginia Disabilities Act itself expressly acknowledges its close connection to both the Rehabilitation Act and the ADA." *Id.* at 348 (citing Va. Code § 51.5-40). Accordingly, "the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia." *Id.* at 348.

The original Complaint was filed on November 16, 2020. (ECF No. 1). Ms. Williams' incarceration that is the subject of the Complaint occurred from November 16, 2018 until May 20, 2019. (Am. Compl. ¶¶ 31, 114). The Complaint was filed on November 16, 2020, more than a year after her incarceration ended. As a result, the Complaint's ADA and Rehabilitation Act claims are barred by the statute of limitations and must be dismissed.

---

[2] The Complaint does not assert an individual capacity claim against Sheriff Kincaid.

## IV.     Alternatively, the Complaint Fails to State an ADA/Rehabilitation Act Failure to Accommodate Claim

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  However, "gender identity disorders not resulting from physical impairments" are excluded from the ADA's and the Rehabilitation Act's definition of "disability."  42 U.S.C. § 12211(b)(1); 29 U.S.C. § 705(20)(F).

The Complaint asserts that Ms. Williams' is disabled under the ADA because she suffers from gender dysphoria.  (Am. Compl ¶¶ 9, 11, 12, 15, 160).  The Complaint explains that gender dysphoria is "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics.[)]"  (Am. Compl. ¶ 12).  As result, gender dysphoria is not a "disability" under the ADA because it is an identity disorder not resulting from physical impairments.  Therefore, the Complaint fails to plead sufficient allegations to state a claim under Title II of the ADA or the Rehabilitation Act because Ms. Williams is not a qualified individual with a disability and those claims must be dismissed.

V.    **The Complaint Fails to State a Common Law Gross Negligence Claim against Sheriff Kincaid**

In Virginia, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (citation omitted).  Gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (quotation omitted).  The Complaint alleges that "Kincaid failed to appropriately supervise, review, and ensure the provision of adequate care and treatment to Ms. Williams by custody and medical, and failed to enact appropriate standards and procedures that would have prevented the harm she experienced." (Am. Compl. ¶ 169).  The Complaints factual allegations are insufficient to state a claim or negligence, yet alone rise to the level required to make the acts alleged in Count IV grossly negligent.

First, "there is no cause of action for negligent supervision under Virginia law." *Costine v. Correct Care Sols., LLC*, No. 2:19CV53, 2019 WL 2775491, at *6 (E.D. Va. July 2, 2019) (citing *MCI Commc'ns Servs., Inc. v. MasTec N. Am., Inc.*, No. 3:17-CV-00009, 2017 WL 2274492, at *3 (W.D. Va. May 24, 2017) (collecting cases)).  Thus, to the extent the Complaint's gross negligence claim is premised on a failure of Sheriff Kincaid to supervise, the Complaint fails to plead a cause of action upon which relief can be granted and must be dismissed as to Sheriff Kincaid.

Second, to the extent that the Complaint's gross negligence claim is premised on medical care and treatment, it is improper.  In Virginia, "all tort claims based on the provision of health care services against health care providers are considered malpractice claims and are governed by the Virginia Medical Malpractice Act."  *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 477 (E.D. Va. 2003) ("claims of gross negligence against health care provider

defendants are properly considered malpractice claims").  Sheriff Kincaid does not meet the definition of a "heath care provider"[3] under the Virginia Medical Malpractice Act and the Virginia Medical Malpractice Act "contains no provision for vicarious liability, and the breadth of the statutory scheme suggests that none is intended."  *Costine*, 2019 WL 2775491, at *6 (internal citations omitted).  Thus, to the extent the gross negligence claim is related to the medical care and treatment of Ms. Williams it fails and must be dismissed as to Sheriff Kincaid.

Thirdly, to the extent that the claims Sheriff Kincaid "failed to enact **appropriate** standards and procedures that would have prevented the harm she has experienced," is not related to medical care and treatment, the allegations do not rise to the level of gross negligence.  (Compl. ¶ 169) (emphasis added).  The allegations themselves foreclose claims for gross negligence "[b]ecause 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care."  *Elliott*, 292 Va. at 622, (*quoting Kuykendall v. Young Life,* 261 Fed.Appx. 480, 491 (4th Cir. 2008)).  The existence of some degree of care is inherent in the Complaint's allegations.  Thus, the claim fails and must be dismissed as to Sheriff Kincaid.

Finally, the Complaint fails sufficiently plead the necessary elements of a common law

---

[3] Va. Code § 8.01-581.1 defines "Health care provider" as "(i) a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse or a person who holds a multistate privilege to practice such nursing under the Nurse Licensure Compact, nurse practitioner, optometrist, podiatrist, physician assistant, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, professional counselor, licensed marriage and family therapist, licensed dental hygienist, health maintenance organization, or emergency medical care attendant or technician who provides services on a fee basis; (ii) a professional corporation, all of whose shareholders or members are so licensed; (iii) a partnership, all of whose partners are so licensed; (iv) a nursing home as defined in § 54.1-3100 except those nursing institutions conducted by and for those who rely upon treatment by spiritual means alone through prayer in accordance with a recognized church or religious denomination; (v) a professional limited liability company comprised of members as described in subdivision A 2 of § 13.1-1102; (vi) a corporation, partnership, limited liability company or any other entity, except a state-operated facility, which employs or engages a licensed health care provider and which primarily renders health care services; or (vii) a director, officer, employee, independent contractor, or agent of the persons or entities referenced herein, acting within the course and scope of his employment or engagement as related to health care or professional services."

negligence claim. "The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was **the proximate cause of injury**, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp.of Virginia v. Saxon Shoes, Inc.,* 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006) (emphasis added). The only physical injury the Complaint alleges is that Ms. Williams' suffered bruising to her right breast as a result of Garcia's search. (Am. Compl. ¶ 93). Ms. Williams' grievance, however, is not with the search itself but the fact that it was conducted by a male rather than a female. There are no allegations that indicate the alleged injury resulted because of the sex of the person conducting search. As a result, the Complaint fails to plausibly connect the alleged injury to the allegation that Sheriff Kincaid "failed to enact appropriate standards and procedures that would have prevented the harm she has experienced." Thus, the gross negligence claim fails and Count IV must be dismissed as to Sheriff Kincaid.

**CONCLUSION**

Based on the foregoing, this Court should dismiss Plaintiff's Complaint against Defendant, Stacey A. Kincaid.

Respectfully submitted,

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Stacey A. Kincaid*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February 2021 I electronically filed the foregoing

Memorandum in Support of Sheriff Kincaid's Motion to Dismiss with the Clerk of Court using

the CM/ECF system and served a copy upon the following via email to:

Josh Erlich, Esq.
The Erlich Law Office, PLLC
2111 Wilson Blvd., Suite 700
Arlington, VA  22201
Phone: (703) 791-9087
jerlich@erlichlawoffice.com
*Counsel for Plaintiff*

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Stacey A. Kincaid*