UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| KESHA T. WILLIAMS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:20-cv-01397 (CMH/TCB) |
| STACEY A. KINCAID, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT STACEY A. KINCAID'S MOTION TO DISMISS

Plaintiff Kesha T. Williams ("Ms. Williams" or "Plaintiff"), by counsel, hereby submits the following Memorandum in Opposition to Defendant Stacey A. Kincaid's ("Sheriff Kincaid" or "Defendant") Motion to Dismiss.

## BACKGROUND

Ms. Williams brings claims against Sheriff Kincaid for policies and practices at the Fairfax County Adult Detention Center ("FCADC") that are discriminatory on the basis of sex in violation of the Fourteenth Amendment, for the FCADC's failure to accommodate her in violation of the Americans with Disabilities Act Amendments Act ("ADAAA"), and for gross negligence under Virginia common law. Plaintiff stipulates to the dismissal of her Equal Protection claim against Sheriff Kincaid due to Plaintiff's inability, for the reason set forth in Defendant's Motion to Dismiss, to recover money damages or seek injunctive relief pursuant to her claim.

Contrary to Defendant's argument, Ms. Williams' claim for failure to accommodate against Sheriff Kincaid is not time barred and Ms. Williams, by reason of her gender dysphoria,

meets the definition of a qualified individual with a disability under the ADAAA. Further, Ms. Williams properly brings a claim of gross negligence against Sheriff Kincaid and has pled facts adequate to support her claim.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claims, or the applicability of defenses." *Presely v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Instead, upon a motion to dismiss, a court assumes the truth of all facts alleged in the complaint and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

More recently, the Supreme Court has explained that, to survive a motion to dismiss, a complaint must contain factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint can withstand a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Finally, in *Aschcroft v. Iqbal*, 556 U.S. 662, 663 (2009), the Supreme Court further explained that to achieve facial plausibility, a complaint should contain sufficient factual allegations to support a reasonable inference that a defendant is liable for the misconduct alleged. *See id*. at 663.

# ARGUMENT

**I.     Plaintiff Does Not Challenge that Her Equal Protection Claim for Money Damages Against Sheriff Kincaid in Her Official Capacity is Barred by the Eleventh Amendment and Her Request for Injunctive Relief Against Sheriff Kincaid for Her Equal Protection Claim is Moot.**

Plaintiff stipulates to the dismissal of her Equal Protection claim based on sex against Sheriff Kincaid, in her official capacity. As sovereign immunity under the Eleventh Amendment bars Plaintiff from the receipt of money damages for this claim and Plaintiff's release from incarceration renders her request for injunctive relief moot, Plaintiff does not challenge Sheriff Kincaid's Motion to Dismiss with respect to this particular claim.

**II.    Plaintiff's Claim Against Defendant Sheriff Kincaid Under the ADAAA Is Not Time Barred.**

Plaintiff's claim against Sheriff Kincaid for failure to accommodate her under the ADAAA is not time barred, as the four-year catch-all statute of limitations set forth under 28 U.S.C. § 1658 applies to her ADAAA claim, and not, as Defendant contends, the one-year statute of limitations provided by the Virginia Disabilities Act.

In addressing the statute of limitations which applies to Plaintiff's claims, Defendant conflates the Americans with Disabilities Act ("ADA") with the subsequent Americans with Disabilities Act Amendments Act ("ADAAA") – a law with substantial new protections passed nearly twenty years after the original ADA. Previously, the Fourth Circuit did apply the statute of limitations from the Virginians with Disabilities Act, the most analogous Virginia state law to the ADA, to claims arising under Title II of the ADA, as this title does not include its own statute of limitations. Subsequent to the enactment of the ADA, Congress addressed the issue of federal statutes without explicit statutes of limitation by passing 28 U.S.C. § 1658, which provides for a

four-year catch-all statute of limitations for actions arising under federal statutes enacted *after* December 1, 1990. The ADA was enacted in July 1990 and is not subject to 28 U.S.C. § 1658. The ADAAA went into effect on January 1, 2009 and does qualify for the four-year catch-all statute of limitations under 28 U.S.C. § 1658.

Critically, under the ADA alone, Ms. Williams would not have been recognized as a qualified individual with a disability. It was not until after the ADAAA went into effect, in January 2009, that the definition of "disability" expanded to include conditions such as that suffered by Ms. Williams, who relies on mitigating measures to ameliorate the effects of gender dysphoria. With hormone therapy and accommodations which permit Ms. Williams to live and present as a woman, Ms. Williams is able to perform major life activities. Am. Compl. ¶¶ 157-159.

Ms. Williams' claim is only possible under the ADAAA, passed after § 1658's four-year statute of limitations went into effect. Prior to the ADAAA's enactment, mitigating measures were considered in the analysis of whether a person has a disability, such that an individual whose major life activities were not substantially impacted when mitigating measures were taken would not be considered a qualified individual with a disability. Pursuant to 42 U.S.C. § 12102(4)(E)(i), (ii), and (iii), the ADAAA specifies that mitigating measures are *not* to be considered in the analysis of whether a person has a disability (with the exception of corrective lenses). For this reason, Ms. Williams' claim does not arise under the ADA, but under the ADAAA, and the four-year catch-all statute of limitations provided under 28 U.S.C. § 1658 is applicable.

A similar question regarding the applicable statute of limitations arose following enactment of an amendment to the Civil Rights Act in 1991, 42 U.S.C. § 1981, *et seq*. In *Jones v.*

4

*R.R. Donnelly and Sons Co.*, the Supreme Court held that a cause of action arising under an amendment to an existing law passed prior to December 1, 1990 qualifies for the four-year catch-all statute of limitations in 28 U.S.C. § 1658. Specifically, the Court held such a cause of action "'aris[es] under an Act of Congress enacted' after December 1, 1990 – and therefore, is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." 541 U.S. 369, 382 (2004) (quoting 28 U.S.C. § 1658). The court in *Jones* reasoned that plaintiff's claims arose under the amended Act such that the four-year federal catchall statute of limitations applied because the plaintiff did not allege a violation of the pre-1990 version of Section 1981 – but did allege violations of Section 1981 as amended in 1991.

The Fourth Circuit applied the same reasoning in *Baldwin v. City of Greensboro,* 714 F.3d 828 (4th Cir. 2013) when the issue arose in the context of a claim brought by a plaintiff under the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"). While the previously enacted Veteran's Reemployment Rights Act of 1974 ("VRRA") provided only injunctive relief and recovery for lost wages and benefits, USERRA allowed a plaintiff to seek liquidated damages and provided for a right to a jury trial. *Id*. at 834. The Fourth Circuit held that since the plaintiff in *Baldwin* specifically requested liquidated damages and a jury trial, his claim would not have been possible under the VRRA and instead arose under USERRA, causing the four-year statute of limitations under § 1658 to apply. *Id*.; *see also Middleton v. City of Chi.*, 578 F.3d 655 (7th Cir. 2009) (relying on *Jones* to reach a similar result with respect to a claim arising under USERRA that could not have been brought under the VRRA).

While the Fourth Circuit has yet to address this issue specifically with respect to causes of action arising under the ADAAA, its rulings in directly analogous cases require the

5

application of the four-year statute of limitations in the instant matter.[1] Ms. Williams' claim against Sheriff Kincaid for failure to accommodate could not have been brought under the ADA, as Ms. Williams would not have met the definition of a qualified individual with a disability as defined by the ADA. Prior to its amendment, individuals whose disabilities could be remedied or ameliorated with the use of mitigating measures were not protected under the ADA, as they were not considered "disabled." Because Ms. Williams' claim can only arise from the ADAAA, her claim is within the statute of limitations.

### III. Plaintiff Has Pled Facts Sufficient to Demonstrate She Is a Qualified Individual with a Disability as Defined Under the ADAAA.

Defendant argues the gender dysphoria from which Ms. Williams suffers is not a disability, but rather a "gender identity disorder not resulting from physical impairment" that is excluded from coverage under the ADAAA by 42 U.S.C. § 12211(b)(1). Neither this Court nor the Fourth Circuit have yet to address the issue of whether gender dysphoria constitutes a disability covered under the ADAAA. The legislative history behind the exclusions to coverage set forth in 42 U.S.C. §12211(b)(1) and case law from other districts demonstrate that gender dysphoria is included within the definition of "disability" provided in the ADAAA.

When the same issue arose in the U.S. District Court for the Eastern District of Pennsylvania, the court held that gender dysphoria qualified as a disability covered by the ADAAA. *Blatt v. Cabela's Retail, Inc.*, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017). The

---

[1] The issue of which statute of limitations properly applied to claims arising under the ADAAA was presented before the Fourth Circuit in *Fauconier v. Clarke*, 966 F.3d 265 (4th Cir. 2020). The Court ultimately decided that statute of limitations issue on alternate grounds and did not rule on statute of limitations question present in the instant matter.

court noted that gender dysphoria substantially limited the plaintiff's major life activities of interacting with others, reproducing, and social and occupational functioning, and denied the defendant's motion to dismiss plaintiff's disability discrimination claim. *Id*. at *3.

In reaching its determination, the court in *Blatt* looked to the text and legislative history of the exceptions provided in 42 U.S.C. § 12211 and determined that neither of the exclusions applied to gender dysphoria. *Id*. The exclusions were described as falling into two different categories: (1) non-disabling condition that concern sexual orientation or identity, and (2) disabling conditions associated with harmful or illegal conduct (such as pedophilia, exhibitionism, voyeurism, etc.). *Id*.

Congress enacted the first exclusion based on "concern among some members . . . the bill would include 'sexual preference as a disability or a protected class of individuals.'" *Id.* at n. 2 (quoting *The Americans with Disabilities Act of 1989: Hearing on H.R. 2273 Before the Subcomms. On Emp't Opportunities & Select Educ. Of the H. Comm. On Educ. & Labor*, 101 Cong. 14 (1989)). The second exclusion was intended to address "a separate concern that the ADA 'could protect individuals from discrimination on the basis of a variety of socially unacceptable, often illegal, behavior if such behavior is considered to be the result of mental illness.'" *Id.* (quoting 135 Cong. Rec. S10765-01, S10796 (daily ed. Sept. 7, 1989), 1989 WL 183216).

The court in *Blatt* found that gender dysphoria did not fit into either category of exclusion provided under 42 U.S.C. § 12211 based on either the plain text or history of the exclusions and held gender dysphoria qualified as a disability under the ADA. Other district courts have held similarly. *See, e.g.*, *Doe v. Massachusetts Dep't of Corr.*, 2018 WL 2994403 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysphoria and

7

suggesting possibility a physical etiology underlying gender dysphoria sufficient to remove it from the "not resulting from physical impairments" category); *Shorter v. Barr*, 2020 WL 1942785, at *10 (N.D. Fla. Mar. 13, 2020), report and recommendation adopted, 2020 WL 1942300 (N.D. Fla. Apr. 22, 2020); *Tay v. Dennison*, 2020 WL 2100761, at *3 (S.D. Ill. May 1, 2020).

Ms. Williams has pled facts sufficient to demonstrate that her gender dysphoria qualifies as a disability not excluded under 42 U.S.C. § 12211. Ms. Williams suffers from gender dysphoria, which is "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth." Am. Compl. ¶ 12. Gender dysphoria can in large part be alleviated through treatment, including hormone therapy. Am. Compl. ¶ 13. Ms. Williams' disability substantially limits major life activities in the absence of hormone therapy and accommodation which permit her to live and present as a woman. Am. Compl. ¶ 158. Ms. Williams is a qualified individual with a disability under Title II of the ADA, as amended, because the definition provided in the ADAAA encompasses individuals who rely on mitigating measures to ameliorate the effects of an impairment. Am. Compl. ¶ 157.

This Court should deny Sheriff Kincaid's Motion to Dismiss Ms. Williams' failure to accommodate claim on these grounds.

**IV. Plaintiff Has Adequately Pled Facts Sufficient to State A Claim Against Sheriff Kincaid for Gross Negligence.**

Ms. Williams' claim of gross negligence against Sheriff Kincaid is not premised on a failure to supervise those employed by her, as Defendant contends, but rather on the Sheriff's long-recognized *respondeat superior* liability as a Virginia constitutional officer. Def.'s Mot. to Dismiss at p. 9. A Sheriff "shall answer civilly for all the acts of [her] deput[ies]." *Verry v.*

*Barry*, 71 Va. Cir. 318 (2006); *see also Agyman v. Pierce*, 26 Va. Cir. 140 (1991) (providing a Sheriff is liable for all torts committed by her deputies); *Mosby v. Mosby*, 50 Va. (9 Gratt.) 584 (1853) ("The sheriff is answerable . . . for the act of [her] officer, the law looking upon the sheriff and all [her] officers as one person.").

Plaintiffs' allegations sufficiently lay out all of the elements of an action in negligence at common law, including "a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. of Virginia v. Saxon Shoes, Inc.*, 271 Va. 218 (2006). Ms. Williams has adequately pled facts sufficient to state a claim of gross negligence against Sheriff Kincaid for her own acts and omissions, and/or for the acts and omissions of her deputies. Sheriff Kincaid's failure to "enact appropriate standards and procedures that would have prevented the harm Ms. Williams experienced," as alleged by Plaintiff, refers both to Sheriff Kincaid's failure to enact a policy to protect Ms. Williams, as well as to her enactment of policies with such a degree of indifference to Ms. Williams' wellbeing as to place Ms. Williams and other transgender individuals directly in harm's way. Sheriff Kincaid's acts and omissions as alleged by Ms. Williams rise to the level of gross negligence as defined under Virginia law.

### A. Plaintiff Has Alleged Facts Sufficient to Demonstrate the Legal Duty Owed to Ms. Williams, the Breach of that Duty by Sheriff Kincaid through the Enactment of Certain Policies and Procedures, and the Injury to Ms. Williams that Such Policies and Procedures Proximately Caused.

Ms. Williams' Complaint provides that, under Virginia law, Sheriff Kincaid is responsible for establishing minimum performance standards and management practices to govern the deputies for whom she is responsible. Am. Compl. ¶ 20. In so doing, Sheriff Kincaid owes a duty to comply with professional standards related to the treatment, care, and supervision of Ms. Williams during her incarceration and for housing Ms. Williams safely. Am. Compl. ¶

9

168. Ms. Williams' Complaint sets forth several breaches of this duty by Sheriff Kincaid, as well as the harm that Ms. Williams experienced as a result.

First, Sheriff Kincaid maintained a policy wherein transgender inmates are housed based on their genitalia. This policy dictated that Ms. Williams be placed in male housing without consideration of her vulnerability in such a circumstance. Am. Compl. ¶¶ 37, 42. In all ways, the law recognizes Ms. Williams as a woman. Ms. Williams has completed a legal name change to her current name and a legal change in her gender markers in her resident state of Maryland. Her driver's license bears the designation of "female." Am. Compl. ¶ 10. This blanket policy of classifying inmates based on their birth-assigned sex is contrary to federal regulations propounded pursuant to the Prison Rape Elimination Act ("PREA"). Am. Compl. ¶¶ 130-131. Ms. Williams suffered harm as a result of this policy, including harassment by inmates and deputies and an exacerbation of her gender dysphoria through repeated mis-gendering and the denial of her ability to live and present as a woman. Am. Compl. ¶¶ 141, 145.

In addition, Sheriff Kincaid maintained a policy wherein transgender and gender non-conforming inmates must receive undergarments consistent with the gender of their housing assignment and are prohibited from purchasing undergarments that are inconsistent with the gender of their housing assignment from the commissary. Am. Compl. ¶¶ 44, 68. As a result of these policies, Ms. Williams was denied a bra despite having a medical need for one and was unable to obtain a bra that fit throughout the duration of her incarceration. Am. Compl. ¶¶ 43, 45, 75. Ms. Williams suffered both physical and emotional harm as a result, including an exacerbation of her pre-existing back condition, pain, embarrassment, and emotional distress related to gender dysphoria. Am. Compl. ¶ 76.

Finally, Sheriff Kincaid maintained a policy wherein all inmates housed within the male population be searched only by male staff and failed to provide any policy or procedure for searches of transgender inmates in the event they do not feel safe being searched by an individual of a particular gender. Am. Compl. ¶¶ 89, 133. This policy is inconsistent with PREA regulations which demand that cross-gender pat downs only be conducted if there is an emergency, and that deputies be effectively trained to conduct professional and respectful searches of transgender persons. Am. Compl. ¶¶ 133-136. As a result, Ms. Williams was subjected to searches of her person by male deputies despite her stated discomfort and requests to be searched by a female. Am. Compl. ¶¶ 87-90. This policy resulted in harm to Ms. Williams, including harassment and physical injury during a search conducted by a male deputy that resulted in bruising to Ms. Williams' right breast. Am. Compl. ¶¶ 91-93.

The facts in the Complaint demonstrate the legal duty owed to Ms. Williams by Sheriff Kincaid, the breach of that duty by Sheriff Kincaid's complete indifference toward the safety and welfare of transgender individuals in her enactment, or failure to enact, certain policies and procedures, and the injuries that Ms. Williams experienced as a result.

**B. Ms. Williams Has Alleged Facts Sufficient to Demonstrate that Sheriff Kincaid's Acts and Omissions Rise to the Level of Gross Negligence.**

Defendant contends that Ms. Williams' allegations do not demonstrate gross negligence on the part of Sheriff Kincaid, as they suggest Kincaid exercised "some degree of care." Def.'s Mot. to Dismiss at p. 10. It is true that, in Virginia, "gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such persons." *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004). However, Ms. Williams has pled facts in her Complaint sufficient to allege that Sheriff Kincaid either enacted certain policies in a manner that demonstrates an utter indifference

to, and complete disregard for, the safety of transgender individuals such as Ms. Williams or failed to enact policies that would mitigate those same concerns.

To the extent Defendant contends that Ms. Williams allegation fails to demonstrate the requisite degree of negligence so as to constitute gross negligence, such a determination is not appropriate at this stage of litigation. "Whether a plaintiff has established gross negligence is a factual question to be decided by a jury." *Lloyd v.* Morgan, 2015 WL 1288346 at *15 (E.D. Va., Mar. 20 2015) (quoting *Chapman v. City of Virginia Beach*, 475 S.E. 2d 798, 801 (Va. 1996)). The facts, taken in the light most favorable to Ms. Williams, could be found by a rational trier of fact to amount to "an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan*, 603 S.E. 2d at 918. This Court should deny Defendant's motion to dismiss Ms. Williams' claim of gross negligence against Sheriff Kincaid.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss Plaintiff's Claims of Failure to Accommodate under the ADAAA (Count III) and gross negligence (Count IV) and allow Plaintiff to proceed against Sheriff Kincaid in her official capacity on these claims.

Dated:      March 12, 2021                    Respectfully,

                                                      /s/
                                          Joshua Erlich, VA Bar No. 81298
                                          Katherine L. Herrmann, VA Bar No. 83203
                                          Davia Craumer, VA Bar No. 87426
                                          THE ERLICH LAW OFFICE, PLLC

2111 Wilson Blvd., Ste. 700
Arlington, VA  22201
Tel:     (703) 791-9087
Fax:     (703) 722-8114
Email: jerlich@erlichlawoffice.com
          kherrmann@erlichlawoffice.com
          dcraumer@erlichlawoffice.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, the foregoing was filed electronically using the Court's CM/ECF System, which sent a true and accurate copy to:

Edward W. Cameron
Cameron McEvoy PLLC
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (Facsimile)
ecameron@cameronmcevoy.com

*Counsel for Defendant*

                                          /s/
                               Katherine L. Herrmann (VA Bar No. 83203)
                               The Erlich Law Office, PLLC
                               2111 Wilson Blvd. Suite 700
                               Arlington, VA  22201
                               Tel:    (703) 791-9087
                               Fax:   (703) 722-8114
                               Email: kherrmann@erlichlawoffice.com

*Counsel for Plaintiff*