**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| KESHA T. WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:20-cv-01397-CMH-TCB |
| | : | |
| STACEY A. KINCAID, et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

COMES NOW the Defendant, Deputy Garcia, by and through his undersigned counsel,

Alexander Francuzenko, Esq. and the law firm of Cook Craig & Francuzenko, PLLC, and in

support of his Motion to Dismiss Plaintiff's Amended Complaint states as follows:

**ALLEGATIONS**

The Plaintiff, Ms. Williams, "was incarcerated by the Fairfax County Sheriff's Office at

the Fairfax County Adult Detention Center [("FCADC"] in Fairfax County, Virginia." (ECF No.

21; Am. Compl. ¶ 8). "Ms. Williams is a transgender woman, an individual whose gender identity

(female) is different from the gender (male) assigned to her at birth." (Am. Compl. ¶ 9). "Ms.

Williams suffers from gender dysphoria . . . ." (Am. Compl. ¶ 12).

The Amended Complaint alleges that "Defendants NP Wang and Dr. Kassa were, at all

relevant times medical professionals who were employed or contracted by the Fairfax County

Sheriff's Office to provide medical treatment to inmates at the FCADC" and "were the individuals

primarily responsible for Ms. William's medical treatment and participated in the denial to her of

adequate and necessary medical treatment for gender dysphoria." (Am. Compl. ¶¶ 22 – 23). The

Complaint alleges that Sheriff Kincaid is "responsible for the implementation of the FCADC's

policies and procedures, as well as the welfare of inmates . . . ."  (Am. Compl. ¶ 23).

The Amended Complaint alleges that Sheriff Kincaid maintains a policy that states "[m]ale inmates shall be classified as such if they have male genitals" and that "[f]emale inmates shall be classified as such if they have female genitals."  (Am. Compl. ¶¶ 37 – 38).  The Complaint alleges that upon her booking, Ms. Williams "underwent an initial medical evaluation pursuant to FCADC policy."  (Am. Compl. ¶ 34).  "During this evaluation, Ms. Williams informed the medical provider, NP Wang, that she is transgender, that she lives full-time as a woman and identifies as a woman, that she has been on hormone treatment for the past fifteen (15) years, and that her current hormone medication regimen consists of a daily pill and a bi-weekly injection."  (Am. Compl. ¶ 35).

In response, "NP Wang asked Ms. Williams whether she had undergone bottom surgery or if she still had the genitalia with which she was born" and "[a]fter hearing Ms. Williams' answers, NP Wang changed Ms. Williams' records and labeled her as 'male' for the purposes of housing classification."  (Am. Comp. ¶¶ 36, 38).  "Sheriff's deputies at the FCADC proceeded to place Ms. Williams in male housing based solely on the determination by NP Wang that Ms. Williams had male genitalia."  (Am. Compl. ¶ 41).

The Amended Complaint alleges that pursuant to Sheriff Kincaid's policies, Ms. Williams was not allowed to shower privately and that her requests to be searched by a female deputy were denied.  (Am. Compl. ¶¶ 86 – 89).  Specifically, the Amended Complaint alleges that in January 2019 Deputy Garcia "a male deputy, searched Ms. Williams and stated, 'Sir, you are a male and I need to search you,' before proceeding to pat Ms. Williams down in a highly aggressive manner," and "Garcia's search of Ms. Williams resulted in physical injury to Ms. Williams, including bruising to Ms. Williams' right breast. This injury caused Ms. Williams pain for several days."

(Am. Compl. ¶¶ 90-91, 93).  Additionally, the Amended Complaint alleges that "[a]fter completing his search of Ms. Williams' person, Garcia stepped to the side of the room and gestured toward Ms. Williams while interacting with other deputies.  Garcia mocked Ms. Williams and made light of his actions in searching her person."  (Am. Compl. ¶ 94).  Ms. Williams was released from FCADC custody on May 20, 2019.  (Am. Compl. ¶ 58).

In her Amended Complaint, Ms. Williams brings claims against Deputy Garcia, in his individual and official capacities, under the Equal Protection Clause of the Fourteenth Amendment for discrimination based on sex and for gross negligence under Virginia common law.

## STANDARD OF REVIEW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted. Fed R. Civ. P. 12(b)(6).  Complaints are dismissed when they fail to assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory.  *See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  All allegations and favorable inferences that can be drawn from those allegations will be viewed in a light most favorable to the non-moving party.  *Albright v. Oliver*, 510 U.S. 266, 267 (1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court adopted the plausibility pleading standard in the case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Court will no longer accept that a cause of action for relief to be granted is probable

based on bald allegations; the allegations must reach a level that make the cause of action plausible. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully . . . . Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" do not state a claim and are not assumed to be true. *Id.* (internal citations and quotations omitted).

## ARGUMENT

The Court should dismiss the Amended Complaint against Deputy Garcia because the claims are time barred. Further, the Court should dismiss the Amended Complaint because it fails to plead sufficient factual allegations to state claims against Deputy Garcia, in his individual and official capacity, for (1) discrimination based on sex in violation of Ms. Williams' equal protection rights under the Fourteenth Amendment, Count II; and (2) common law gross negligence, Count IV.

## I.    The Complaint is Time Barred

Ms. William's § 1983 and gross negligence claims have statute of limitations periods of two years. *See Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (internal citations omitted). The basis for Ms. Williams' claims against Deputy Garcia arise from an alleged search that occurred in January 2019. (Am. Compl. ¶¶ 90-94). When Ms. Williams filed her original Complaint on November 16, 2020, Deputy Garcia was not named as a defendant. Rather, Deputy Garcia was named in the Amended Complaint filed on February 12, 2021, taking the place of a previously named "John Doe" defendant. (ECF No. 21).

The Relation Back doctrine applies to re-naming John Does in amended complaints when the John Doe defendant receives notice before the expiration of the service provided under Federal Rule of Civil Procedure Rule 4(m). *See Rumble v. 2nd Ave Value Stores*, 442 F. Supp. 3d 909, 915 (E.D. Va. 2020). Under Federal Rule of Civil Procedure 4(m), Ms. Williams had until February 14, 2021 to serve the defendants. Fed. R. Civ. P. 4(m). Although Ms. Williams filed her Amended Complaint on February 12, 2021, the summons for Deputy Garcia was not issued until February 16, 2021 and Deputy Garcia was not served within the Rule 4(m) period of the original Complaint. (ECF No. 28).

As a result, Deputy Garcia did not have notice of the claims against him prior to the expiration of the time allotted by Rule 4(m) and the Amended Complaint's claims against Deputy Garcia do not relate back to originally filed Complaint. Therefore, the claims against Deputy Garcia are barred by the statute of limitations because they were filed in February 2021, more than two years after January 2019, and must be dismissed.

II. **Alternatively, the Complaint's Fourteenth Amendment Equal Protection Claim Based on Sex for Money Damages against Deputy Garcia, in his Official Capacity, is Barred by the Eleventh Amendment**

"[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362 (1991) (internal citations omitted). "Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Hafer*, at 26. Thus, state officials sued for monetary relief in their official capacities are not persons because an official-capacity suit "is no different from a suit against the State itself." *Id*. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual

5

officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, (1945), *overruled on other grounds by, Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, (2002).

"In Virginia, sheriffs are state officials . . . whose positions are constitutionally created . . . ." *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992); Va. Code § 15.2.1609; Va. Const. Art. 7, § 4. Accordingly, a suit against a sheriff in the Commonwealth of Virginia in his or her official capacity—or a sheriff's office—is equivalent to a suit against the state and not a "person" under § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (dismissing official capacity claim against Sheriff Perry as neither a state nor its officials acting in their official capacities are "persons" under § 1983); *Doud v. Virginia*, 282 Va. 317, 321 (2011) (In Virginia, a county sheriff "is an independent public official whose authority is derived from the Constitution of Virginia") (quoting *Carraway v. Hill*, 265 Va. 20, 24 (2003)).

As a result, Deputy Garcia, in his official capacity is akin to the sheriff, and the sheriff is equivalent to Virginia which enjoys sovereign immunity under the Eleventh Amendment. Therefore, Plaintiff's § 1983 claim for monetary damages against Deputy Garcia, in his official capacity, must be dismissed.

## III. Alternatively, the Complaint's Fourteenth Amendment Equal Protection Claim Based on Sex for Non-Monetary Relief against Deputy Garcia, in his Official Capacity, is Moot

While the Complaint's § 1983 official capacity claim for monetary relief is barred, the Complaint's § 1983 official capacity claim for non-monetary is not subject to same prohibition. *See Will*, 491 U.S. at 71 n. 10 (strictly for the purposes of prospective relief a state officer in their official capacity is considered a "person" under § 1983). However, the Complaint's request for declaratory and injunctive relief is moot.

"Mootness questions often arise in cases involving inmate challenges to prison policies or conditions." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007). The Fourth Circuit has "held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief." *Id.* at 286-87 (internal citations omitted). The claim is moot because "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa,* 507 F.3d. at 287. Accordingly, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

One exception to mootness, "permits federal courts to consider disputes . . . that are capable of repetition, yet evading review." *Id.* (citing *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, (2007) (internal quotation marks omitted)). "[J]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation." *Id.* at 288-89. "There must be a 'demonstrated probability' that the challenged action will recur again, and to the same complainant." *Id.* at 289 (citing *Murphy v. Hunt,* 455 U.S. 478, 483 (1982) (per curiam)).

In *Incumaa*, the inmate's claim was premised on the conditions in a maximum security unit. *Id.* at 282. During litigation, the prisoner was transferred out of the maximum security unit. *Id.* at 285. The Fourth Circuit noted that inmates are not arbitrarily placed in maximum security and such placement was "directly tied to an inmate's bad behavior." *Id.* at 289. As a result, the Fourth Circuit determined that under the "capable of repetition, yet evading review" standard it

"would have to forecast bad behavior . . . and that it cannot base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules." *Id.* The Fourth Circuit held that "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power to hear cases for which there is *in fact a reasonable* expectation of repetition." *Id.* (internal quotation marks and citations omitted) (emphasis original).

The narrow "capable of repetition, yet evading review" exception is not applicable here. The exception would require this Court to engage in conjecture as to whether Ms. Williams would be subject to subsequent incarceration in the FCADC. In other words, it would require the Court to speculatively presume Ms. Williams will be arrested again. Thus, Ms. Williams' § 1983 claim for non-monetary damages against Deputy Garcia, in his official capacity, are moot and must be dismissed.

**IV.** **Alternatively, Plaintiff Fails to Allege Sufficient Facts to State a Fourteenth Amendment Equal Protection Claim Based on Sex Against Deputy Garcia**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks and citations omitted). The Amended Complaint fails to sufficiently plead allegations that show disparate treatment (1) resulting from intentional or purposeful discrimination or (2) that is not reasonably related to penological interests.

A plaintiff must "demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *see also Nordlinger*

8

*v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection clause "simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*") (emphasis added). In this case, the allegations fail to make the requisite showing that there was any intentional or purposeful discrimination on behalf of Deputy Garcia. The Amended Complaint does not call into question different treatment between genders in jails, for example, separate housing or same gender searches. Rather, the Amended Complaint is alleging disparate treatment through policies connected to the gender classification process.

The Amended Complaint alleges that under the Fairfax County Sheriff's Office Standard Operating Procedures "[i]f the inmate is housed with the male population, the inmate shall be searched by male staff only." (Am. Compl. ¶ 89). Consequently, the Amended Complaint alleges that Deputy Garcia was following the jails operating procedures. Moreover, under these allegations, the search was performed in the same manner as it would have been performed for other inmates that Ms. Williams was housed with. These allegations fail to show that the search was conducted differently from the searches of the other inmates Ms. Williams was housed with or that the search was the result of intentional or purposeful discrimination attributable to Deputy Garcia. Thus, the analysis stops at this point since the allegations fail to make the requisite showing.

If a plaintiff sufficiently pleads disparate treatment resulting from intentional or purposeful discrimination, which Ms. Williams does not, then "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654. "When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002)

(citing *Morrison,* 239 F.3d at 654–55). In the prison context, courts "must determine whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Id.* (quoting *Shaw v. Murphy,* 532 U.S. 223, 225 (2001)). This holds true "even when the alleged infringed constitutional right would otherwise warrant higher scrutiny." *Id.* (citing *Morrison,* 239 F.3d at 655, 656). A plaintiff "must allege facts sufficient to overcome the presumption of reasonableness applied to prison policies." *Id.*

To determine whether a plaintiff's allegations overcome the presumption, courts apply the the factors set forth in *Turner v. Safley,* 482 U.S. 78, 89–90 (1987). Under the circumstances set out by Ms. Williams' equal protection claim, three of the four factors are relevant. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Turner,* 482 U.S. at 89–90. Second, courts must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* at 90. Third, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* at 90–91. This final factor "is not a 'least restrictive alternative' test: prison officials need not set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.*

Had the Amended Complaint established sufficient allegations to reach this analysis, its allegations, nonetheless, would fail to overcome the presumption. First, the search policy attacked by the Amended Complaint requires male guards in the male housing unit to search the inmates, which Deputy Garcia's alleged actions are in line with, stems from the alleged policy for classification and housing by gender. Thus, there is a "valid, rational connection" between

the policy and penological interests of the jail.[1]  Second, there were no ready alternatives.  The

Amended Complaint indicated the search was during a shakedown, thus delaying the search would

have allowed time to hide or destroy contraband for Ms. Williams or other inmates.  Additionally,

the Amended Complaint alleges that a female officer was present but did not search Ms. Williams

indicating the guards were not comfortable with performing the search as requested.  Accordingly,

Deputy Garcia's alleged actions, following a policy he is not alleged to have created, were

reasonably related to the peneological interests of the jail.

Therefore, the Amended Complaint fails to state a § 1983 equal protection claim under the

Fourteenth Amendment and Count II against Deputy Garcia must be dismissed.

## V.     Alternatively, the Complaint Fails to State a Common Law Gross Negligence Claim against Deputy Garcia

The basis for the gross negligence claim against Deputy Garcia is that he performed a cross-

gender search.  Count IV asserts that that Defendants, referenced generally, "fail[ed] to provide

timely and necessary medical treatment; punish[ed] Ms. Williams for behaviors and actions

reflecting her medical diagnosis; den[ied] her access to programs and activities; and fail[ed] to

house Ms. Williams safely."  (Am. Compl. ¶ 169).  There are no allegations in the Amended

Complaint that Deputy Garcia was involved in the decision of Ms. Williams' housing classification

---

[1] Courts have recognized that "legitimate differences between the security needs of male and female inmates that can justify differential treatment." *Estes v. Virginia Dep't of Corr.*, No. 7:18-CV-602, 2020 WL 1472219, at *7 (W.D. Va. Mar. 26, 2020) (citing *Veney*, 293 F.3d at 734); *see also Washington v. McAuliffe*, No. 7:16-CV-00476, 2019 WL 1371859, at *11 (W.D. Va. Mar. 26, 2019) (rejecting equal protection claim based on differences in grooming policy for men and women in light of testimony that men are more inclined to present security risks than women and that, although women fight, they rarely do so with weapons); *Ashann-Ra v. Commonwealth*, 112 F. Supp. 2d 559, 571–72 (W.D. Va. 2000) (same and citing to defendants' assertions that "female inmates are not as prone to be violent [or] to hide weapons in their hair"); *DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 328 (E.D. Va. 2000) (same), *aff'd*, 13 F. App'x 96 (4th Cir. 2001) (affirming "on the reasoning of the district court").

or any of her requests for medical treatment or to participate in jail programs/activities. Thus, ostensibly, Deputy Garcia falls in the "fail[ed] to house Ms. Williams safely" category.

The specific allegations as to Deputy Garcia are that (1) he "searched Ms. Williams and stated, 'Sir, you are a male and I need to search you,' before proceeding to pat Ms. Williams down in a highly aggressive manner," (2) the search "resulted in physical injury to Ms. Williams, including bruising to Ms. Williams' right breast," and (3) he "mocked Ms. Williams and made light of his actions in searching her person." (Am. Compl. ¶¶ 91, 93-94). None of these allegations are sufficient to establish a gross negligence claim.

In Virginia, gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (quotation omitted). Gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016) (citation omitted). "Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by a jury. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Id.* (*quoting Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id.* (*quoting Kuykendall v. Young Life,* 261 Fed.Appx. 480, 491 (4th Cir. 2008)).

Here, the Amended Complaint alleges that under the Fairfax County Sheriff's Office Standard Operating Procedures "[i]f the inmate is housed with the male population, the inmate

shall be searched by male staff only." (Am. Compl. ¶ 89). Consequently, the Amended Complaint alleges that Deputy Garcia was following the jails operating procedures. Following the jail's operating procedures shows an exercise of some degree of care and cannot be said to shock fair-minded person or be "an utter disregard of prudence."

Further, the Complaint fails to sufficiently plead the necessary elements of a common law negligence claim. "The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was **the proximate cause of injury**, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp.of Virginia v. Saxon Shoes, Inc.,* 271 Va. 206, 218, 624 S.E.2d 55, 62 (2006) (emphasis added). The only physical injury the Complaint alleges is that Ms. Williams' suffered bruising to her right breast as a result of Deputy Garcia's search. (Am. Compl. ¶ 93). Ms. Williams' grievance, however, is not with the search itself but the fact that it was conducted by a male rather than a female. There are no allegations that indicate the alleged injury resulted because of the sex of the person conducting search. Thus, there is no nexus between the alleged grossly negligent conduct and the injury.

The Complaint fails to state sufficient facts to state a claim for gross negligence and Count IV must be dismissed as to Deputy Garcia.

## **CONCLUSION**

Based on the foregoing, this Court should dismiss Plaintiff's Complaint against Defendant, Deputy Garcia.

Respectfully submitted,

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Garcia*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of April, 2021, I electronically filed the foregoing

Memorandum in Support of Deputy Garcia's Motion to Dismiss with the Clerk of Court using the

CM/ECF system and served a copy upon the following via email to:

Josh Erlich, Esq.
The Erlich Law Office, PLLC
2111 Wilson Blvd., Suite 700
Arlington, VA  22201
Phone: (703) 791-9087
jerlich@erlichlawoffice.com
*Counsel for Plaintiff*

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Garcia*