IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KESHA T. WILLIAMS, :
:
    Plaintiff, :
:
v. : Case No. 1:20-cv-01397-CMH-TCB
:
STACEY A. KINCAID, et al. :
:
    Defendants. :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

COMES NOW the Defendant, Xin Wang, Nurse ("Nurse Wang") by and through her undersigned counsel, Alexander Francuzenko, Esq. and the law firm of Cook Craig & Francuzenko, PLLC, and in support of her Motion to Dismiss Plaintiff's Amended Complaint states as follows:

## ALLEGATIONS

The Plaintiff, Ms. Williams, "was incarcerated by the Fairfax County Sheriff's Office at the Fairfax County Adult Detention Center [("FCADC"] in Fairfax County, Virginia." (ECF No. 21; Am. Compl. ¶ 8). "Ms. Williams is a transgender woman, an individual whose gender identity (female) is different from the gender (male) assigned to her at birth." (Am. Compl. ¶ 9). "Ms. Williams suffers from gender dysphoria . . . ." (Am. Compl. ¶ 12).

The Amended Complaint alleges that "Defendants NP Wang and Dr. Kassa were, at all relevant times medical professionals who were employed or contracted by the Fairfax County Sheriff's Office to provide medical treatment to inmates at the FCADC" and "were the individuals primarily responsible for Ms. William's medical treatment and participated in the denial to her of adequate and necessary medical treatment for gender dysphoria." (Am. Compl. ¶¶ 22 – 23). The

1

Amended Complaint alleges that Sheriff Kincaid is "responsible for the implementation of the FCADC's policies and procedures, as well as the welfare of inmates . . . ." (Am. Compl. ¶ 23).

The Amended Complaint alleges that Sheriff Kincaid maintains a policy that states "[m]ale inmates shall be classified as such if they have male genitals" and that "[f]emale inmates shall be classified as such if they have female genitals." (Am. Compl. ¶¶ 37 – 38). The Amended Complaint alleges that upon her booking, Ms. Williams "underwent an initial medical evaluation pursuant to FCADC policy." (Am. Compl. ¶ 34). "During this evaluation, Ms. Williams informed the medical provider, NP Wang, that she is transgender, that she lives full-time as a woman and identifies as a woman, that she has been on hormone treatment for the past fifteen (15) years, and that her current hormone medication regimen consists of a daily pill and a bi-weekly injection." (Am. Compl. ¶ 35).

In response, "NP Wang asked Ms. Williams whether she had undergone bottom surgery or if she still had the genitalia with which she was born" and "[a]fter hearing Ms. Williams' answers, NP Wang changed Ms. Williams' records and labeled her as 'male' for the purposes of housing classification." (Am. Comp. ¶¶ 36, 38). "Sheriff's deputies at the FCADC proceeded to place Ms. Williams in male housing based solely on the determination by NP Wang that Ms. Williams had male genitalia." (Am. Compl. ¶ 41).

"Ms. Williams completed a medical records release form on November 16, 2018." (Am. Compl. ¶ 51). Nurse Wang put in her treatment notes that "heath care staff were to contact Ms. Williams' physician and follow up with Ms. Williams once her medical records were received." (Am. Compl. ¶ 52). The Amended Complaint alleges that Nurse Wang "did not contact consult with Ms. Williams' medical records or physicians prior to stopping her hormone treatments." (Am. Compl. ¶ 53). Ms. Williams medical records were received on December 4, 2018. (Am.

Compl. ¶ 57). On December 10, 2018 Nurse Wang ordered Ms. Williams' medication and on the following day Nurse Wang initiated treatment. (Am. Compl. ¶ 64).

The Amended Complaint alleges that pursuant to Sheriff Kincaid's policies, Ms. Williams was not allowed to shower privately and that her requests to be searched by a female deputy were denied. (Am. Compl. ¶¶ 86 – 89). Ms. Williams alleges that she was denied the reasonable accommodation of a bra and female underwear. (Am. Compl. ¶¶ 43 – 44; 69, 71 – 73; 77 – 79). Ms. Williams alleges that it took several months for her to be permitted to enter the Workforce Program when other non-transgender inmates were permitted as early as two-weeks. (Am. Compl. ¶¶ 148 – 149). Ms. Williams was released from FCADC custody on May 20, 2019. (Am. Compl. ¶ 58).

In her Amended Complaint, Ms. Williams brings claims against Nurse Wang, in her official and individual capacities, for deliberate indifference under the Eighth Amendment, for failing to accommodate in violation the ADA/Rehabilitation Act, and for gross negligence under Virginia common law.

## STANDARD OF REVIEW

A motion to dismiss is appropriate when a complaint fails to state a cause of action upon which relief can be granted. Fed R. Civ. P. 12(b)(6). Complaints are dismissed when they fail to assert a legal theory that is recognized by the law or to allege sufficient facts to support a cognizable legal theory. *See Smile Care Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996). All allegations and favorable inferences that can be drawn from those allegations will be viewed in a light most favorable to the non-moving party. *Albright v. Oliver*, 510 U.S. 266, 267 (1994).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court adopted the plausibility pleading standard in the case of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).

The Court will no longer accept that a cause of action for relief to be granted is probable based on bald allegations; the allegations must reach a level that make the cause of action plausible. "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a Defendant has acted unlawfully . . . . Where a Complaint pleads facts that are 'merely consistent with' a Defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" do not state a claim and are not assumed to be true. *Id.* (internal citations and quotations omitted).

## ARGUMENT

The Amended Complaint fails to plead sufficient factual allegations to state claims against Nurse Wang, in her official and individual capacities, for (1) deliberate indifference to serious medical need in violation of the Eighth Amendment, Count I; (2) failing to accommodate under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act, Count III; and (3) common law gross negligence, Count IV.

## I. The Amended Complaint's Eighth Amendment Claim for Monetary Damages against Nurse Wang, in her Official Capacity, is Barred by the Eleventh Amendment

"[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362 (1991) (internal citations omitted). "Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Hafer*, at 26. Thus, state officials sued for monetary relief in their official capacities are not persons because an official-capacity suit "is no different from a suit against the State itself." *Id*. "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, (1945), *overruled on other grounds by, Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, (2002).

"In Virginia, sheriffs are state officials . . . whose positions are constitutionally created . . . ." *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893 (E.D. Va. 1992); Va. Code § 15.2.1609; Va. Const. Art. 7, § 4. Accordingly, a suit against a sheriff in the Commonwealth of Virginia in his or her official capacity—or a sheriff's office—is equivalent to a suit against the state and not a "person" under § 1983. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (dismissing official capacity claim against Sheriff Perry as neither a state nor its officials acting in their official capacities are "persons" under § 1983); *Doud v. Virginia*, 282 Va. 317, 321 (2011) (In Virginia, a county sheriff "is an independent public official whose authority is derived from the Constitution of Virginia") (quoting *Carraway v. Hill*, 265 Va. 20, 24 (2003)).

The Amended Complaint pleads its § 1983 Eighth Amendment claim against Nurse Wang in her official capacity as either an employee or contractor of the Fairfax County Sheriff's Office.

5

(Am. Compl. ¶ 21). As a result, the official capacity claim against Nurse Wang is akin to a claim against the sheriff, who is equivalent to Virginia and enjoys sovereign immunity under the Eleventh Amendment. Therefore, Nurse Wang, in official capacity, enjoys immunity and Ms. Williams' § 1983 claim for monetary damages against her must be dismissed.

## II. The Amended Complaint's Eighth Amendment Claim for Non-Monetary Relief against Nurse Wang, in her Official Capacity, is Moot

While the Amended Complaint's § 1983 official capacity claim for monetary relief is barred, the Amended Complaint's § 1983 official capacity claim for non-monetary is not subject to same prohibition. *See Will*, 491 U.S. at 71 n. 10 (strictly for the purposes of prospective relief a state officer in their official capacity is considered a "person" under § 1983). However, the Amended Complaint's request for declaratory and injunctive relief is moot.

"Mootness questions often arise in cases involving inmate challenges to prison policies or conditions." *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007). The Fourth Circuit has "held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief." *Id*. at 286-87 (internal citations omitted). The claim is moot because "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa,* 507 F.3d. at 287. Accordingly, "[a]ny declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

One exception to mootness, "permits federal courts to consider disputes . . . that are capable of repetition, yet evading review." *Id.* (citing *Fed. Election Comm'n v. Wisconsin Right to Life,*

6

*Inc.,* 551 U.S. 449, (2007) (internal quotation marks omitted)). "[J]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation." *Id.* at 288-89. "There must be a 'demonstrated probability' that the challenged action will recur again, and to the same complainant." *Id.* at 289 (citing *Murphy v. Hunt,* 455 U.S. 478, 483 (1982) (per curiam)).

In *Incumaa*, the inmate's claim was premised on the conditions in a maximum security unit. *Id.* at 282. During litigation, the prisoner was transferred out of the maximum security unit. *Id.* at 285. The Fourth Circuit noted that inmates are not arbitrarily placed in maximum security and such placement was "directly tied to an inmate's bad behavior." *Id.* at 289. As a result, the Fourth Circuit determined that under the "capable of repetition, yet evading review" standard it "would have to forecast bad behavior . . . and that it cannot base [its] mootness jurisprudence in this context on the likelihood that an inmate will fail to follow prison rules." *Id.* The Fourth Circuit held that "[s]uch conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power to hear cases for which there is *in fact a reasonable* expectation of repetition." *Id.* (internal quotation marks and citations omitted) (emphasis original).

The narrow "capable of repetition, yet evading review" exception is not applicable here. The exception would require this Court to engage in conjecture as to whether Ms. Williams would be subject to subsequent incarceration in the FCADC. In other words, it would require the Court to speculatively presume Ms. Williams will be arrested again. Thus, Williams' § 1983 claim for non-monetary damages against Nurse Wang, in her official capacity, are moot and must be dismissed.

## III. The Amended Complaint Fails to Plead Sufficient Facts to State an Eighth Amendment Deliberate Indifference Claim Against Nurse Wang

To state an Eighth Amendment violation in the medical context, a prisoner must show "deliberate indifference to serious medical needs of prisoners." See *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *De'Lonta v. Angelone*, 330 F.3d 630, 633-34 (4th Cir. 2003) (citations omitted). "[O]fficials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Bridges v. Keller*, 519 F. App'x 786, 787 (4th Cir. 2013) (unpublished) (per curiam) (citing *Estelle*, 429 U.S. at 104–05). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

The Eighth Amendment claim asserts that Nurse Wang was deliberately indifferent to Ms. Williams' medical needs because (1) "NP Wang failed to conduct an individualized assessment of the care Ms. Williams required for gender dysphoria," (2) that Nurse Wang stopped and caused delay in Ms. Williams' hormone therapy, (3) Nurse Wang missed some of Ms. Williams' hormone therapy treatments. (Am. Compl. ¶¶ 117 – 119). These incidents as alleged are insufficient to state a claim for deliberate indifference. Additionally, incidents occurring prior to February 12, 2019 are barred by the statute of limitations.

### A. Initial Hormone Therapy

First, Ms. Williams' § 1983 claim based on her initial hormone therapy is time barred. Claims under § 1983 have statute of limitations periods of two years. *See Graham v. City of Manassas Sch. Bd.*, 390 F. Supp. 3d 702, 709 (E.D. Va. 2019) (internal citations omitted). The allegations regarding Nurse Wang, stopping and restarting Ms. Williams' hormone therapy at the time Ms. Williams was booked, occured between November 16, 2018 and December 11, 2018.

8

(Am. Compl. ¶¶ 51, 53, 56, 58, 63-66). When Ms. Williams filed her original Complaint within on November 16, 2020 Nurse Wang was not named as a defendant. Rather, Nurse Wang was named in the Amended Complaint filed on February 12, 2021, taking the place of a previously named "John Doe" defendant. (ECF No. 21).

The Relation Back doctrine applies to re-naming John Does in amended complaints when the John Doe defendant receives notice before the expiration of the service provided under Federal Rule of Civil Procedure Rule 4(m). *See Rumble v. 2nd Ave Value Stores*, 442 F. Supp. 3d 909, 915 (E.D. Va. 2020). Under Federal Rule of Civil Procedure 4(m), Ms. Williams had until February 14, 2021 to serve the defendants. Fed. R. Civ. P. 4(m). Although Ms. Williams filed her Amended Complaint on February 12, 2021, the summons for Nurse Wang was not issued until February 16, 2021 and Nurse Wang was not served within the Rule 4(m) period of the original Complaint. (ECF No. 28).

As a result, Nurse Wang did not have notice of the claims against her prior to the expiration of the time allotted by Rule 4(m) and the Amended Complaint's claims against Nurse Wang do not relate back to originally filed Complaint. Therefore, the claims against Nurse Wang that are premised on incidents that occurred prior to February 12, 2019, are barred by the statute of limitations because they were filed in February 2021, more than two years after December 11, 2019, and must be dismissed.

Alternatively, even if these claims relate back, the Amended Complaint fails to allege sufficient facts to show that the delay in the initial hormone therapy was the result of deliberate indifference. A prison health care provider cannot be found liable under the Eighth Amendment, "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Alleged delays in providing adequate care do not rise to

the level of deliberate indifference where the delay does not cause further injury or result in some substantial harm to the patient. *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Kane v. Hargis*, 987 F.2d 1005, 1009 (4th Cir.1993). Further, a "delay in providing treatment does not violate the Eighth Amendment unless the gravity of the injury is apparent." *Walker v. Hershey*, 979 F.2d 849, 1992 WL 337096 at *2 (4th Cir. 1992) (unpublished) (per curiam) (citing *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)).

Here, the Amended Complaint alleges that Nurse Wang's notes indicated that health care staff were to obtain Ms. Williams' medical records. Further, the Amended Complaint alleges that two weeks after Ms. Williams completed a medical records release form, another nurse asked Ms. Williams to complete the form again. (Am. Compl. ¶ 57). Nurse Wang received Ms. Williams' records on December 4, 2018 and six days later ordered Ms. Williams' hormone therapy treatments. (Am. Compl ¶¶ 58, 63).

This delay, after needing to have Ms. Williams complete the forms again, at most amounts to an "inadvertent failure" to manage available medication, and thus is not actionable under the Eighth Amendment. *See Ebersole v. Conover*, 2010 WL 3629581, at *6 (W.D. Va. Aug. 27, 2010), *report and recommendation adopted*, 2010 WL 3585833 (W.D. Va. 2010) (citing *Estelle*, 429 U.S. at 105–06) (inmate who missed several dosages of medication due to medical staff error did not rise to the level of deliberate indifference). Further, from the time Nurse Wang had Ms. Williams' records and ordered the treatment, the Amended Complaint fails to allege that her conditioned worsened or that suffered substantial harm in that period.

As such, Ms. Williams fails to adequately allege a deliberate indifference claim under § 1983 against Nurse Wang and the claim should be dismissed.

### B.  Missed Hormone Therapy Treatments

The Amended Complaint indicates that after Nurse Wang started Ms. Williams' hormone therapy on December 11, 2019, she received those treatments without issue until April 22, 2019. (Am. Compl. ¶¶ 66, 111).  Ms. Williams alleges that Nurse Wang failed to provide her with injections on April 22, 2019 and May 6, 2019.  (Am. Compl. ¶ 111-112).  Ms. Williams submitted a written complaint about the missed treatments on May 9, 2019.  (Am. Compl. ¶ 113).

Importantly, The Amended Complaint also asserts that "NP Wang and Dr. Kassa were the individuals primarily responsible for Ms. Williams' medical treatment."  (Am. Compl. 22).  The Amended Complaint also asserts that "Ms. Williams' bi-weekly hormone injections continued to be administered by FCADC under the supervision of NP Wang."  (Am. Compl. ¶ 110).  Based on the allegations, the Amended Complaint, ostensibly, asserts a supervisory liability claim against Nurse Wang.

To state a claim for supervisory liability under § 1983, a plaintiff must show (1) that the supervisor had actual or constructive knowledge that his or her subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Willis v. Blevins*, 966 F. Supp.2d 646, 661-62 (E.D. Va. 2013) (*quoting Shaw v. Stroud*, 13 F.2d 791, 799 (4th Cir. 1994)).

None of the above allegations are sufficient to support any of the three *Shaw v. Stroud* supervisory liability factors set forth above.  By the time notice was provided, Ms. Williams was about to be released and there are no allegations regarding the response to the notice.  Moreover,

based on these allegations, again, at worst these missed treatments amounts to an "inadvertent failure" to manage available medication, and thus is not actionable under the Eighth Amendment. *See Ebersole*, 2010 WL 3629581, at *6 (inmate who missed several dosages of medication due to medical staff error did not rise to the level of deliberate indifference). At the time of the missed treatments, the Amended Complaint notes that Ms. Williams was put into the Workforce Program. (Am. Compl. ¶ 106). Ms. Williams was released on May 20, 2019. (Am. Compl. ¶ 114).

As such, Ms. Williams fails to adequately allege a deliberate indifference claim under § 1983 against Nurse Wang and the claim should be dismissed.

### C. Individualized Assessment

The allegations indicate Ms. Williams underwent an initial medical evaluation with Nurse Wang on the date she was booked. (Am. Compl. ¶ 34). Aside from Ms. Williams' hormone treatments, the Amended Complaint does not provide any other information as to the treatment Ms. Williams' received at the time she was booked. Rather, the Amended Complaint alleges that Ms. Williams' informed Nurse Wang about her history of hormone therapy. After receiving Ms. Williams' medical records, Nurse Wang ordered hormone therapy for Ms. Williams. (Am. Compl. ¶¶ 63-64).

"[P]risoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362-63 (4th Cir. 2013) (unpublished) (internal citations omitted); *see also Blankenship v. SWVRJ-Abingdon*, 2009 WL 2207931, at *2 (W.D. Va. July 23, 2009) ("[I]nmates are not entitled to the best medical care or the particular medical care of the inmate's choosing") (citing *Estelle*, 429 U.S. at 104-05). Consequently, a "[m]ere disagreement as to the proper medical treatment does not constitute deliberate indifference." *Id*. (internal citations omitted). Nurse Wang performed a medical evaluation of Ms. Williams and continued

Ms. Williams' hormone treatments. The Amended Complaint fails to allege any facts that in any way would indicate not conducting an individualized assessment of the conduct an individualized assessment of the care Ms. Williams required for gender dysphoria" constitutes deliberate indifference. Thus, Ms. Williams fails to adequately allege a deliberate indifference claim under § 1983 against Nurse Wang and the claim should be dismissed.

IV. **The Amended Complaint Fails to State an ADA/Rehabilitation Act Failure to Accommodate Claim against Nurse Wang in her Individual Capacity**

"Neither Title II of the ADA nor Section 504 of the Rehabilitation Act permit individual capacity suits." *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 552 (D. Md. 2019) (citing *Barnes v. Young*, 565 F.App'x 272 (4th Cir. 2014) ("Title II of the ADA does not provide for individual capacity suits against state officials") (internal quotation marks and citations omitted); *Badillo v. Thorpe*, 158 F.App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA or RA."); *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."). As a result, Ms. Williams cannot hold Nurse Wang liable in her individual capacity for violations of Title II of the ADA and Section 504 of the Rehabilitation Act.

Further, the Amended Complaint pleads its ADA/Rehabilitation claim against Nurse Wang in her official capacity as either an employee or contractor of the Fairfax County Sheriff's Office. (Am. Compl. ¶ 21). "[T]he distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device." *Hafer*, 502 U.S. at 27 (internal citations omitted). "Although state officials literally are persons, an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office." *Id.* at 26. Accordingly, as the Amended Complaint asserts an official capacity claim against the Fairfax County Sheriff,

Sheriff Kincaid, the official a capacity claim against an employee or contractor of the sheriff is redundant.

Therefore, Count III against Nurse Wang, in her individual and official capacities, must be dismissed.

V.  **The Amended Complaint Fails to State a Common Law Gross Negligence Claim against Nurse Wang**

First, to the extent the Amended Complaint's gross negligence claim is premised on conduct that occurred prior to February 12, 2019 (the stopping of treatment, restarting of treatment, and failure to conduct an individualized assessment) those claims are time barred under Virginia's two-year statute of limitations for personal injuries. Va. Code § 8.01-243. In Virginia, "neither the Rules of the Supreme Court of Virginia nor the legislature contemplate [John] Doe pleadings, aside from the narrow exception for uninsured motorists." *Frazier v. Red Robin Int'l, Inc.*, 99 Va. Cir. 214 (Fairfax 2018) (citing *Conley v. Bishop*, 32 Va. Cir. 236, 237 (Fairfax 1993)). Accordingly, the Amended Complaint cannot relate back to the original Complaint for the purposes of Nurse Wang, and the claims premised on conduct that occurred prior to February 12, 2019 must be dismissed.

Furthermore, in Virginia, "all tort claims based on the provision of health care services against health care providers are considered malpractice claims and are governed by the Virginia Medical Malpractice Act." *Gedrich v. Fairfax Cty. Dep't of Family Servs.*, 282 F. Supp. 2d 439, 477 (E.D. Va. 2003) ("claims of gross negligence against health care provider defendants are properly considered malpractice claims"). As previously stated, the Amended Complaint's official capacity claims against Nurse Wang are equivalent to a claim against the Commonwealth of Virginia. Consequently, the Ms. Williams' gross negligence claim, which in reality is a medical malpractice claim, is subject to Va. Code § 8.01-195.6 which states that "[e]very claim cognizable

against the Commonwealth or a transportation district shall be forever barred unless the claimant or his agent, attorney or representative has filed a written statement of the nature of the claim . . . within one year after such cause of action accrued." Va. Code § 8.01-195.6(A). The Amended Complaint fails to allege that such notice was provided and as a result the claim against Nurse Wang in her official capacity is barred and must be dismissed.

Finally, the Amended Complaint's allegations in insufficient to state a medical malpractice claim. A medical malpractice claim seeking to hold a provider liable another's actions is impermissible in Virginia. *Wolf v. Fauquier Cty. Bd. of Sup'rs*, No. 1:06CV945 JCC, 2007 WL 2688418, at *5 (E.D. Va. Sept. 12, 2007)*, aff'd sub nom. Wolf v. Fauquier Cty. Bd. of Sup'rs,* 555 F.3d 311 (4th Cir. 2009) ("Although a physician, a nurse, or a hospital each may be held liable in their own right, there is no basis or reason for holding a physician liable for the conduct of another physician, a hospital nurse, or any other hospital employee for medical malpractice under a theory of vicarious liability") (internal quotation marks and citations omitted). As it relates to the remaining claims regarding the allegations that Nurse Wang failed to provide Ms. Williams with injections on April 22, 2019 and May 6, 2019, Ms. Williams is, ostensibly, asserting a vicarious liability claim. *See supra*, pp. 11-12.

Again, while the Amended Complaint conclusorily alleges that Nurse Wang failed to provide Ms. Williams her injections, the allegations indicate that Nurse Wang was not the only provider responsible for Ms. Williams' care. The Amended Complaint alleges that another doctor was responsible for her care and that Ms. Willliams was seen by other nurses. (Am. Compl. ¶¶ 22, 55-57). Thus, the based on the factual allegations, the Amended seeks to improperly hold Nurse Wang liable as a supervisor for a collective failure to provide Ms. Williams with her injections.

Furthermore, in a medical malpractice claim the "plaintiff must establish: (1) the applicable standard of care, (2) a breach of that standard of care, and (3) that this breach proximately caused plaintiff's injuries." *Parker v. United States*, 475 F. Supp. 2d 594, 598 (E.D. Va.), *aff'd,* 251 F. App'x 818 (4th Cir. 2007). The Amended Complaint fails to allege an injury occurring after April 22, 2019, making it unclear what, if any, injury Ms. Williams could have suffered as a result of the missed injections. Thus, the Amended Complaint fails to allege sufficient facts that any alleged breach was the proximate cause of an injury.

Therefore, the medical malpractice claim presented as gross negligence claim fails and Count IV must be dismissed as to Nurse Wang.

## **CONCLUSION**

Based on the foregoing, this Court should dismiss Plaintiff's Complaint against Defendant, Xin Wang.

Respectfully submitted,

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Wang*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April, 2021, I electronically filed the foregoing Memorandum in Support of Nurse Wang's Motion to Dismiss with the Clerk of Court using the CM/ECF system and served a copy upon the following via email to:

Josh Erlich, Esq.
The Erlich Law Office, PLLC
2111 Wilson Blvd., Suite 700
Arlington, VA  22201
Phone: (703) 791-9087
jerlich@erlichlawoffice.com
*Counsel for Plaintiff*

_____/s/_____
Alexander Francuzenko, VSB #36510
Philip C. Krone, Esq. VSB #87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com
*Counsel for Defendant Wang*