UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KESHA T. WILLIAMS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:20-cv-01397 (CMH/TCB) |
| STACEY A. KINCAID, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT DEPUTY GARCIA'S MOTION TO DISMISS**

Plaintiff Kesha T. Williams ("Ms. Williams" or "Plaintiff"), by counsel, hereby submits the following Memorandum in Opposition to Defendant Deputy Garcia's ("Deputy Garcia" or "Defendant") Motion to Dismiss.

**BACKGROUND**

Ms. Williams brings claims against Deputy Garcia for violating her right to equal protection under the Fourteenth Amendment to the United States Constitution as well as gross negligence in violation of Virginia common law.

Deputy Garcia violated Ms. Williams' constitutional rights – even though she took every precaution the law affords to avoid such treatment. Consistent with her gender identity, Ms. Williams has completed a legal name change to her current name and a legal change to her gender markers in her resident state of Maryland. Her driver's license bears the designation of "female." Am. Compl. ¶ 10.  In all ways, the law recognizes Ms. Williams as a woman. Am. Compl. ¶ 10. Despite taking these steps, Deputy Garcia still subjected Ms. Williams to a cross-gender search, in violation of her constitutional rights.

Furthermore, Ms. Williams' claims against Deputy Garcia are not time barred, as this Court granted a 30-day extension for service of process of the Amended Complaint in addition to the time permitted under the Federal Rules of Civil Procedure. Ms. Williams advances her equal protection claim against Deputy Garcia in his individual capacity based on facts sufficient to overcome the presumption of reasonableness typically applied to detention facilities. Further, Ms. Williams properly brings a claim of gross negligence against Deputy Garcia and has pled facts adequate to support her claim.

## **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claims, or the applicability of defenses." *Presely v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Instead, upon a motion to dismiss, a court assumes the truth of all facts alleged in the complaint and must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

More recently, the Supreme Court has explained that, to survive a motion to dismiss, a complaint must contain factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint can withstand a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Finally, in *Aschcroft v. Iqbal*, 556 U.S. 662, 663

(2009), the Supreme Court further explained that to achieve facial plausibility, a complaint should contain sufficient factual allegations to support a reasonable inference that a defendant is liable for the misconduct alleged. *See id*. at 663.

**ARGUMENT**

**I.     MS. WILLIAMS' CLAIMS AGAINST DEPUTY GARCIA ARE NOT TIME BARRED.**

Plaintiff's claims against Deputy Garcia are not time barred. As Defendant notes, the Relation Back doctrine applies to re-naming John Does in amended complaints when the John Doe defendant receives notice before the expiration of service provided under Federal Rule of Civil Procedure Rule 4(m). Def.'s Mot. to Dismiss at 4-5 (citing *Rumble v. 2nd Ave Value Stores*, 442 F. Supp. 3d 909, 915 (E.D. Va. 2020)).

Federal Rule of Civil Procedure 4(m) provides that a defendant must be served within 90 days after the complaint is filed. However, the Rule further states that the plaintiff may show good cause for a failure to serve a defendant within this period, at which point "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Ms. Williams filed her original complaint on November 16, 2020. (ECF No. 1). Deputy Garcia is first referred to by name, rather than as a John Doe defendant, in Ms. Williams' Amended Complaint filed on February 12, 2021. (ECF No. 21). On that same date, by agreement of both Parties and with notice to Defendants' counsel, Plaintiff filed a Motion to Extend Time to Serve with this Court requesting, with good cause, an extension of thirty (30) days to serve all named Defendants. (ECF No. 25). The Court granted Plaintiff's motion and permitted her until

March 18, 2021 to serve Defendants. (ECF No. 26). Plaintiff served Deputy Garcia on March 12, 2021. (ECF No. 45).[1]

As this Court granted a 30-day extension of the 90-days permitted for service under Federal Rule 4(m), Ms. Williams' claims against Deputy Garcia properly relate back to the date on which her original Complaint was filed. The claims against Deputy Garcia set forth in Plaintiff's Amended Complaint are not time barred.

## II. PLAINTIFF INTENDS TO PROCEED AGAINST DEPUTY GARCIA IN HIS INDIVIDUAL CAPACITY ONLY.

Plaintiff stipulates to the dismissal of her Fourteenth Amendment equal protection claim based on sex and her gross negligence claim against Deputy Garcia in his official capacity. Plaintiff intends to proceed against Deputy Garcia in his individual capacity only.

## III. PLAINTIFF HAS PLED FACTS SUFFICIENT TO STATE A FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM BASED ON SEX AGAINST DEPUTY GARCIA IN HIS INDIVIDUAL CAPACITY.

To succeed on a Section 1983 claim, "a plaintiff must prove by a preponderance of the evidence that: (1) the defendant engaged in conduct which deprived plaintiff of a federal constitutional or statutory right, (2) that the defendant was acting under color of law, and (3) that the acts of that defendant proximately caused the plaintiff's damages." *Daniczek v. Spencer*, 156 F. Supp. 739, 747 (E.D. Va. 2016). To state a claim for violation of the Equal Protection Clause, a plaintiff must plausibly allege first "that he has been treated differently from others with whom

---

[1] In addition to the above, Deputy Garcia's counsel coordinated with Plaintiff to effect service of process on Deputy Garcia and Defendant Xin Wang. *See* Exhibits 1, 2. Deputy Garcia's counsel did not object to that service as untimely because it was not untimely.

4

he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir 2017). In deference to prison authorities, a prisoner must allege that "the disparate treatment [was not] reasonably related to any legitimate penological interests." *Fauconier v. Clarke*, 966 F.3d 265 (citing *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002)).

### A. Defendant Treated Ms. Williams Differently from Other Similarly Situated Inmates.

Ms. Williams has pled facts sufficient to demonstrate plausibly that Deputy Garcia treated her differently from other similarly situated inmates and that the unequal treatment she endured was the result of discriminatory animus. *See, e.g.*, *Equity in Ath. Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (citations omitted)).

Deputy Garcia discriminated against Ms. Williams on the basis of sex by subjecting her to a cross-gender search of her person despite his knowledge that Ms. Williams is a woman and despite her stated discomfort with being subjected to a pat-down search by a male deputy. Am. Compl. ¶ 138. Deputy Garcia did not perform cross-gender searches of other inmates at FCADC, but instead singled out Ms. Williams based on her gender identity and her status as a transgender woman. The Fairfax County Sheriff's Office does not require inmates who are not transgender or gender non-conforming to be subject to cross-gender searches during their incarceration. Am. Compl. ¶ 144.

### B. Defendant's Unequal Treatment of Ms. Williams Was the Result of Intentional or Purposeful Discrimination Based on Her Sex.

The Fourth Circuit has held that "transgender persons constitute a quasi-suspect class," such that claims of disparate treatment based on transgender status are *per se* actionable and subject to a heighted degree of scrutiny. *Grimm v. Gloucester County School Board*, 973 F.3d

586, 607 (4th Cir. 2020). In addition, the Supreme Court has recently acknowledged that discrimination against an individual for being transgender constitutes unlawful discrimination on the basis of sex. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1754 (2020) ("An employer who fires an individual merely for being gay or transgender defies the law.").

Ms. Williams alleges that Deputy Garcia engaged in this behavior because Ms. Williams is transgender, and because of the discriminatory, sex-based belief that people who are assigned the male sex at birth should display only stereotypically male characteristics, behaviors, or dress. Am. Comp. ¶ 150. Ms. Williams' allegations are sufficient to demonstrate discriminatory animus on behalf of Deputy Garcia on the basis of Ms. Williams' sex and status as a transgender woman.

Deputy Garcia referred to her as "sir" despite knowing her to be a transgender woman, and affirmatively told her "you are a man" when she requested to be searched by a female deputy. Am. Compl. ¶¶ 91-92. Deputy Garcia refused her request to be searched by a female deputy, despite a female deputy being present and available to perform the search. Am. Compl. ¶ 90. Deputy Garcia searched her in an unnecessarily rough manner that resulted in physical injury and bruising to her right breast, and that afterward she witnessed him mock her and joke about her discomfort with the search among other Sheriff's deputies. Am. Compl. ¶¶ 93-94.

Deputy Garcia was aware of Ms. Williams' sex and status as a transgender woman and he specifically discriminated against her because of it, denying her the access to a same-gender deputy to perform her search and mocking her because of her visible discomfort that he caused. Defendant Garcia's actions were intentionally discriminatory.

### C. Defendant's Policy that Permits Cross-Gender Searches of Transgender Inmates Is Insufficiently Calibrated to Protect Any Legitimate Penological Interest.

Defendant fails to assert a legitimate penological interest that justifies the cross-gender search of transgender individuals. Cross-gender searches do not protect any legitimate penological interest and are expressly prohibited under Prison Rape Elimination Act ("PREA") regulations with the exception of extraordinary, emergency circumstances. 28 C.F.R. § 115.15(a), Am. Compl. ¶ 134.

Defendant claims it has a legitimate penological interest in the security needs of its prisoners. However, the policy permitting cross-gender searches is not calibrated to protect that interest. Defendant's reliance on case law that describes "legitimate differences between the security needs of male and female inmates that can justify differential treatment" is misplaced. Def.'s Mot. to Dismiss at 11. Ms. Williams does not allege disparate treatment between herself and the men incarcerated at FCADC. Rather, Ms. Williams' claim rests on having been subjected to a cross-gender search to which inmates who are not transgender or gender non-conforming are not subject during their incarceration. Am. Compl. ¶ 144.

Unlike the policies at issue in the case law cited by Defendant, the treatment to which Ms. Williams was subjected is not justified by the perceived and/or actual difference in the security threat posed by female, versus male, inmates. By Defendant's reasoning, Ms. Williams posed less of a security threat than the general population of male inmates with whom she was housed. This difference does not justify subjecting Ms. Williams to a cross-gender search to which similarly-situated, non-transgender inmates were not subjected.  Further, the fact that a female deputy conducted a search of Ms. Williams during her initial incarceration vitiates Deputy Garcia's argument that his cross-gender search of Ms. Williams was based in any legitimate penological interest or otherwise required by FCADC policy. Am. Compl. ¶ 33.

Deputy Garcia knew Ms. Williams to be a woman, heard her request to be searched by a female deputy, and proceeded with a cross-gender search of her despite a female deputy being present and available to conduct the search. Am. Compl. ¶¶ 90, 138. Fairfax County Sheriff's Office does not describe any policy or procedure for searches of transgender inmates in the event they do not feel safe being searched by an individual of a particular gender. Am. Compl. ¶ 135.

Deputy Garcia searched Ms. Williams in a highly aggressive manner after he deliberately misgendered her, saying, "Sir, you are a male and I need to search you." Am. Compl. ¶¶ 91-92. He purposefully misgendered her despite FCADC policy requiring deputies to refer to inmates only by their last name. Am. Compl. ¶ 146. His actions were not dictated by any FCADC policy and are contrary to PREA regulations that require deputies to conduct professional and respectful searches of transgender persons. 28 C.F.R. § 115.15(f), Am. Compl. ¶ 136.

The evaluation of whether a plaintiff has alleged facts sufficient to demonstrate the disparate treatment alleged was not reasonably related to any legitimate penological interest is guided by the factors set forth in *Turner v. Safely*:

> First, there must be a 'valid, rational, legitimate governmental interest put forward to justify it. Second, a court must consider 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources, generally.' Third, 'the absence of ready alternatives is evidence of reasonableness of a prison regulation.

*Fauconier*, 966 F.3d at 277-78 (citing *Turner v. Safely*, 482 U.S. 78, 89-91 (1987)).

Pursuant to the *Turner* factors, Ms. Williams has plausibly alleged that Deputy Garcia did not have a legitimate penological reason to conduct a cross-gender search of her person. Ms. Williams has pled facts sufficient to demonstrate the cross-gender search of transgender individuals does nothing to protect the health, and welfare of individuals in FCADC custody or serve the interest of security at the facility. *Turner*, 482 U.S. at 89.

With regard to the second *Turner* factor, Defendant does not contend that accommodation of Ms. Williams' request to be free from this type of search would have resulted in a negative impact on guards and other inmates or on the allocation of prison resources, generally. *Id.* at 90.

Finally, the absence of a ready alternative does not bolster the reasonableness of Deputy Garcia's actions. *Id.* at 90-91. Defendant's argument that "there were no ready alternatives" is contrary to the facts alleged and suggests Defendant does not believe their female deputies to be qualified or competent to perform the same duties performed by Deputy Garcia. Ms. Williams was searched by a female deputy at the start of her incarceration at FCADC, and a female deputy was present and available to conduct a search of Ms. Williams at the time of Deputy Garcia's actions. Am. Compl. ¶¶ 33, 90. Defendant's conclusion that the guards must not have been "comfortable with performing the search as requested" is equally unavailing. Def.'s Mot. to Dismiss at p. 11.

Ms. Williams has plausibly alleged that she has been treated differently from others with who she is similarly situated, that the unequal treatment was the result of intentional or purposeful discrimination against her based on her status as a transgender woman, and that her treatment was not justified under the appropriate level of scrutiny, even given the deference afforded to prison authorities. For all of these reasons, this Court should deny Deputy Garcia's motion to dismiss Ms. Williams' equal protection claim.

### IV. PLAINTIFF HAS ADEQUATELY PLED FACTS SUFFICIENT TO STATE A CLAIM AGAINST DEPUTY GARCIA FOR GROSS NEGLIGENCE.

Plaintiffs' allegations sufficiently support all of the elements of an action for negligence at common law, including "a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff."

9

*Blue Ridge Serv. Corp. of Virginia v. Saxon Shoes, Inc.*, 271 Va. 218 (2006). Deputy Garcia's acts and omissions, as alleged by Ms. Williams, rise to the level of gross negligence as defined under Virginia law. Ms. Williams has adequately pled facts sufficient to state a claim of gross negligence against Deputy Garcia.

> **A. Plaintiff Has Alleged Facts Sufficient to Demonstrate the Legal Duty Owed to Ms. Williams, the Breach of that Duty by Deputy Garcia, and the Injury to Ms. Williams Proximately Caused.**

The facts Ms. Williams alleged in her Amended Complaint demonstrate the legal duty owed to Ms. Williams by Deputy Garcia, the breach of that duty by Deputy Garcia, and the psychological and physical injury Ms. Williams experienced as a result. Deputy Garcia actions constituted a complete indifference to Ms. Williams health and safety and a lack of care that rises to the level of gross negligence.

Ms. Williams' Amended Complaint alleges Deputy Garcia owed a duty to her based on his responsibility for the welfare of inmates. Am. Compl. ¶ 23. Ms. Williams alleges that Deputy Garcia breached his duty to her when he performed a cross-gender search of her person, despite her request to be searched by a female deputy and the presence and availability of a female deputy to perform the search at the time the incident occurred. Ms. Williams suffered harm as a result of Deputy Garcia's actions, including an exacerbation of her symptoms of gender dysphoria caused by Deputy Garcia's purposeful misgendering of her and his performance of a cross-gender search. Deputy Garcia searched Ms. Williams in a highly aggressive manner that caused her physical injury, including bruising to her right breast.

Deputy Garcia had a legal duty to protect the welfare of inmates, breached that duty by performing a cross-gender search of Ms. Williams' person, and caused injury to Ms. Williams as a result.

### B. Ms. Williams Has Alleged Facts Sufficient to Demonstrate that Deputy Garcia's Acts and Omissions Rise to the Level of Gross Negligence.

In Virginia, "gross negligence is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such persons." *Elliot v. Carter*, 292 Va. 618, 622 (2016). Defendant contends that Ms. Williams' allegations do not demonstrate gross negligence on the part of Deputy Garcia, as they suggest Deputy Garcia exercised "some degree of care." Def.'s Mot. to Dismiss at p. 12. The only support Defendant provides for this conclusion is that Deputy Garcia was following FCADC operating procedures at the time he performed a cross-gender search of Ms. Williams. *Id*. The facts as alleged in Ms. Williams' Amended Complaint related to Deputy Garcia's actions, as described in detail in Section III.B, *supra*, run completely contrary to this assertion. Ms. Williams has pled facts in her Amended Complaint sufficient to allege that Deputy Garcia acted either contrary to, or outside the guidance of, FCADC's operating procedure at the time he performed this search.

Further, to the extent Defendant contends that Ms. Williams' allegation fails to demonstrate the requisite degree of negligence so as to constitute gross negligence, such a determination is not appropriate at this stage of litigation. "Whether a plaintiff has established gross negligence is a factual question to be decided by a jury." *Lloyd v.* Morgan, 2015 WL 1288346 at *15 (E.D. Va., Mar. 20 2015) (quoting *Chapman v. City of Virginia Beach*, 475 S.E. 2d 798, 801 (Va. 1996)). At this point, the facts, taken in the light most favorable to Ms. Williams, assert "an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan*, 603 S.E. 2d at 918. This Court should deny Defendant's motion to dismiss Ms. Williams' claim of gross negligence against Deputy Garcia.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss Plaintiff's Claims of Discrimination on the Basis of Sex in Violation of the Equal Protection Clause of the Fourteenth Amendment (Count II) and gross negligence (Count IV) and allow Plaintiff to proceed against Deputy Garcia in his individual capacity on these claims.

Dated:      April 19, 2021                              Respectfully,

 

                                                                    /s/
Joshua Erlich, VA Bar No. 81298
Katherine L. Herrmann, VA Bar No. 83203
Davia Craumer, VA Bar No. 87426
THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA  22201
Tel:     (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com
            kherrmann@erlichlawoffice.com
            dcraumer@erlichlawoffice.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on April 19, 2021, the foregoing was filed electronically using the Court's CM/ECF System, which sent a true and accurate copy to:

Alexander Francuzenko
Philip C. Krone, Esq.
Cook Craig & Francuzenko
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
alex@cookcraig.com
pkrone@cookcraig.com

*Counsel for Defendant Garcia*

           /s/
Katherine L. Herrmann (VA Bar No. 83203)
The Erlich Law Office, PLLC
2111 Wilson Blvd. Suite 700
Arlington, VA  22201
Tel:    (703) 791-9087
Fax:   (703) 722-8114
Email: kherrmann@erlichlawoffice.com

*Counsel for Plaintiff*